William L. TAYLOR, et al.,
Plaintiffs, Appellees,

v.

STATE OF RHODE ISLAND, et
al., Defendants, Appellants.

No. 96–1002.

United States Court of Appeals,
First Circuit.

Heard May 8, 1996.

Decided Dec. 4, 1996.

Thomas A. Palombo, Special Assistant Attorney General, Providence, RI, argued (Jeffrey B. Pine, Attorney General, Rebecca Tedford Partington, Special Assistant Attorney General, and Ellen Evans Alexander, Deputy Chief Legal Counsel, on the brief), for appellants.

Richard A. Sinapi, Cranston, RI, argued (Sinapi Law Associates, Ltd. and American Civil Liberties Union, on the brief) for appellees.

Before TORRUELLA, Chief Judge, CYR, and CUMMINGS,* Circuit Judges.

CYR, Circuit Judge.

The Rhode Island Department of Corrections ("Department") appeals from a district court judgment declaring *ultra vires* and unconstitutional the Department's application of a Rhode Island statute which would impose a monthly offender fee upon the appellees, all of whom were sentenced to probationary terms under Department supervision for criminal offenses committed prior to the ef-

* Of the Seventh Circuit, sitting by designation.

fective date of the statute as implemented by regulations promulgated by the Department. The district court held that the Department's interpretation of the statute exceeded its authority under the enabling statute and that the statute, as applied to appellees, violated the *ex post facto* clauses in the United States and Rhode Island Constitutions. We vacate the district court judgment and remand for the entry of summary judgment for appellants on the *ultra vires* and *ex post facto* claims, and for further proceedings on appellees' procedural due process claims.

# I

## BACKGROUND

Rhode Island General Laws § 42–56–38, P.L.1992, ch. 133, art. 97, § 2, directs that "[e]ach sentenced offender committed to the care, custody, or control of the [Department] shall *reimburse* the state for the cost or the reasonable portion thereof incurred by the state relating to such commitment." (Emphasis added.) The offender fee statute itself *expressly delegates* to the Department the power to determine its effective date by declaring that its provisions "shall not be effective until the date rules and regulations implementing its provisions are filed with the office of the Secretary of State." *Id.*

The Department responded by promulgating, *inter alia*, Regulation 10.07.03, designating *July 1, 1994* as the effective date of the "offender fee" program, following its filing of the implementing regulations with the Secretary of State on June 17, 1994. *See also* R.I. Gen. Laws § 42–56–10(v) (Powers of the director); R.I. Gen. Laws § 42–56–38 (Assessment of costs). The Regulation further provides for "offender fee" waivers based on inability to pay, *see* Regulation § 10.07.03(II)(E), and, in cases of nonpayment, authorizes notification of the appropriate criminal court at any parole or probation revocation hearing, *id.* § 10.07.03(II)(D), as well as civil actions to collect unpaid offender fees, *id.* Mere nonpayment does not consti-

tute a parole or probation violation, however. *Id.* § 10.07.03(II)(D)(3). Nor are offenders in "banked" status (i.e., either residing outside Rhode Island or not on supervised status) liable for the fee, *id.* § 10.07.03(II)(C)(3).

Appellees, all convicted offenders *sentenced to probation prior to July 1, 1994,* each received advance written notice that the $15.00 offender fee would become effective July 1, 1994, and subsequently received monthly bills. Appellees thereafter commenced suit in federal district court claiming that the offender fee statute, as applied, violates the Ex Post Facto and Due Process clauses of the United States and Rhode Island Constitutions. In due course, the parties submitted cross-motions for summary judgment on a stipulated record and the district court ruled that (i) the Department had exceeded its authority under the enabling statute by interpreting the statute so as to render the offender fee retroactive as to appellees and (ii) the statute violated the Ex Post Facto Clause since it retroactively increased the "punishment" for their pre-enactment crimes. *See Taylor v. State of Rhode Island Dept. of Corrections,* 908 F.Supp. 92 (D.R.I.1995).

# II

## DISCUSSION[1]

### A. *The Ultra Vires Claim*

The district court concluded that the statutory interpretation adopted by the Department exceeded the scope of its delegated authority because it (i) results in an unauthorized "retroactive" application and (ii) would not be accorded deference by the Rhode Island Supreme Court. As the plain language of the statute demonstrates that the Department did not exceed its mandate, we demur.

Under Rhode Island law, it "is well established ... that statutes and their amendments are presumed to apply prospectively." *Hydro–Manufacturing v. Kayser–Roth,* 640 A.2d 950, 954 (R.I.1994). *See also VanMar-*

---

1. We review summary judgment rulings *de novo*, and must uphold them if the record, "viewed in the light most favorable to the nonmoving party, reveals no trialworthy issue of material fact and

the moving party is entitled to judgment as a matter of law." *Velez–Gomez v. SMA Life Assur. Co.,* 8 F.3d 873, 874–75 (1st Cir.1993).

*ter v. Royal Indem. Co.,* 556 A.2d 41, 44 (R.I.1989); *Lawrence v. Anheuser-Busch, Inc.,* 523 A.2d 864, 869 (R.I.1987). It is only in the event that "it appears by strong, clear language or necessary implication that the Legislature intended the statute or amendment to have a retroactive effect," *id.; see also Pion v. Bess Eaton Donuts Flour Co., Inc.,* 637 A.2d 367, 371 (R.I.1994), that the new enactment "will be interpreted to operate retrospectively." *Avanzo v. Rhode Island Dept. of Human Servs.,* 625 A.2d 208, 211 (R.I.1993).

■ The statute itself explicitly states that the offender fee "shall not be effective until the date the rules and regulations are filed." R.I. Gen. Laws § 42–56–38. Thus, its plain language requires no interpretation, *see Whitehouse v. Rumford Liability & Ins. Co.,* 658 A.2d 506, 508 (R.I.1995), as it mandates prospective application. *See, e.g., Hydro-Manufacturing,* 640 A.2d at 955 (statute which states that it "shall take effect upon passage" evinces plain legislative intent that it be given only prospective application); *Avanzo,* 625 A.2d at 211 (holding that phrase "shall take effect" indicates legislative intent that statute be given prospective effect). As the Rhode Island Legislature explicitly delegated to the Department the responsibility for promulgating and filing the required implementing rules and regulations with the Secretary of State before the offender fee program could take effect, R.I. Gen. Laws § 42–56–38, and there is no claim that the Department failed to comply with the legislative mandate, its designation of a later (July 1, 1994) effective date could not render its interpretation either *ultra vires* or retroactive.[2]

## B. *The Ex Post Facto Claim*

The district court awarded appellees summary judgment on their claims that the offender fee statute violates the Ex Post Facto Clause under both the United States Constitution and the Rhode Island Constitution.[3] As the Rhode Island Supreme Court has held that Federal Ex Post Facto Clause jurisprudence likewise guides the required analysis under the Rhode Island Constitution, *Lerner v. Gill,* 463 A.2d 1352, 1356 (R.I.1983), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985), these claims merge.

The Ex Post Facto Clause effectively prohibits laws " 'retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts.' " *California Dept. of Corrections v. Morales,* —— U.S. ——, ——, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995) (quoting *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990)). *See also Hamm v. Latessa,* 72 F.3d 947, 956 (1st Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 154, 136 L.Ed.2d 99 (1996). Thus, *ex post facto* laws operate retroactively either to redefine a crime or increase its "punishment." *Morales,* —— U.S. at —— n. 3, 115 S.Ct. at 1602 n. 3. *See also Dominique v. Weld,* 73 F.3d 1156, 1162 (1st Cir.1996).

It would appear that the parties failed to call the district court's attention to significant precedents governing the pivotal determina-

---

2. It appears that the district court may have been misled by an ambiguity in the statutory language, which states that the offender fee shall apply to "each sentenced offender *committed* to the care, custody or control of the [Department]." R.I. Gen. Laws § 42–56–38 (emphasis added). The court correctly noted that "[t]he word 'committed' could mean either 'who has been committed,' which would include existing probationers, or 'who is committed,' which would implicate only new probationers." *Taylor,* 908 F.Supp. at 104. However that may be, we suggest, the Department's interpretation cannot be considered *ultra vires.* As the agency responsible for implementing and enforcing the statute, it was entirely appropriate that the Department disambiguate the statutory language. *See Gallison v. Bristol Sch. Comm.,* 493 A.2d 164, 166 (R.I. 1985).

We need not decide at this time, however, whether the Department's interpretation of the term "committed" would be material under a due process analysis. *See Avanzo,* 625 A.2d at 208 (retroactive application violates due process); *Lawrence,* 523 A.2d at 864 (due process challenge to explicitly-retroactive legislation); *but see Rhode Island Depositors Economic Protection Corp. v. Brown,* 659 A.2d 95, 103 (R.I.), *cert. denied,* —— U.S. ——, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995) (retrospectivity alone does not render statute violative of due process).

3. Article 1, § 10, of the United States Constitution provides: "No State shall ... pass any ... ex post facto Law." Article 1, § 12, of the Constitution of the State of Rhode Island reads: "No ex post facto law ... shall be passed."

tion whether civil fees constitute "punishment." See Taylor, 908 F.Supp. at 98. Although it involved a "double jeopardy" claim, United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), applies as well in the ex post facto context. See Martel v. Fridovich, 14 F.3d 1, 3 (1st Cir.1993) (citing Halper for the view that a civil sanction is "punishment" only when it serves the aims of retribution or deterrence).[4] As we explained recently, the Halper "punishment" test applies to "fines, forfeitures, and other monetary penalties designed to make the sovereign whole for harm or loss that is quantifiable in monetary terms." United States v. Stoller, 78 F.3d 710, 717 (1st Cir.), cert. dismissed, —— U.S. ——, 117 S.Ct. 378, 136 L.Ed.2d 297 (1996). Since it is clear that the challenged offender fee fits the Stoller mold, the Halper "punishment" test applies. See also Artway v. Attorney General of State of New Jersey, 81 F.3d 1235, 1256 n. 18 (3d Cir.1996) (noting that Halper test applies because Ex Post Facto Clause serves aims similar to Double Jeopardy Clause); DiCola v. Food & Drug Admin., 77 F.3d 504, 506–07 (D.C.Cir.1996) (applying Halper test to both ex post facto and double jeopardy claims); Bae v. Shalala, 44 F.3d 489, 492–93 (7th Cir.1995) (employing Halper standard to determine whether civil sanction implicates ex post facto concerns).

■ Halper adapted the Supreme Court's longstanding subjective test for defining "punishment," see DeVeau v. Braisted, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960) ("The question is … whether the legislative aim was to punish that individual for past activity."), by coupling it with an objective standard. Accordingly, under the

current regime governing civil provisions, we inquire not only whether the legislative intent was punitive in nature, but whether the challenged civil provision is "so extreme … as to constitute punishment." Halper, 490 U.S. at 442, 109 S.Ct. at 1898.

For purposes of determining whether a law is penal in nature, "the labels 'criminal' and 'civil' are not of paramount importance." Id. at 447, 109 S.Ct. at 1901. Rather, the court must "assess[ ] … the [sanction] imposed and the purposes [it] may fairly be said to serve. Simply put, a civil … sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment[,]" id. at 448, 109 S.Ct. at 1901–02; see Martel, 14 F.3d at 3; that is to say, retribution and deterrence. Halper, 490 U.S. at 448, 109 S.Ct. at 1901.

■ On its face, the offender fee statute, suitably located among other Rhode Island civil statutes, imposes a civil charge.[5] The modest fee authorized by the statute comprises no part of any sentence imposed for the crimes committed by offenders. Rather, it is expressly designed to "reimburse" the Department for costs directly associated with providing goods and services required to supervise probationers and parolees living in the community. R.I. Gen. Laws § 42–56–38. Moreover, all offender fee revenues are dedicated to such use, Regulation 1.12.01(IV)(K), and waivers are available to offenders unable to pay, Regulation 10.07.03(II)(E). Finally, the same monthly fee is assessed against all offenders released into the community who are currently under Department supervision, without regard to the nature or severity of their respective offenses.[6] In our judgment, so modest a cost-based supervisory fee reasonably cannot

---

4. Subsequent to the district court decision in this case, the Rhode Island Supreme Court adopted the Halper test for determining whether a civil fee constitutes "punishment" under the Double Jeopardy Clause. See State v. One Lot of $8,560, 670 A.2d 772 (R.I.1996).

5. Our research discloses no relevant legislative history.

6. In determining that the offender fee constituted "punishment," the district court ruled that it was part of "the law annexed to the crime," Calder v. Bull, 3 U.S. 386, 390, 3 Dall. 386, 390, 1 L.Ed. 648 (1798), since probation is punishment and

the offender fee is linked to appellees' probationary sentences. In our view, this analysis overlooks several determinative distinctions.

First, though a probationary sentence is "punishment," the supervisory services for probationers released into the community are largely rehabilitative, both in nature and purpose. See R.I. Gen. Laws § 42–56–4(c) (Organization of department) ("Rehabilitative services shall include … intermediary sanctions (including but not limited to … probation, parole, restitution, and community service)…."). See also United States v. Cardona, 903 F.2d 60, 62 (1st Cir.1990) (noting that probation serves goals of rehabilitation and

be deemed punitive in *purpose,* especially since any conceivable retributive or deterrent effect could only be inconsequential. *See Martel,* 14 F.3d at 3.

Finally, we inquire whether the fee nonetheless runs afoul of the objective test announced in *Halper:* a monetary assessment "that cannot be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901. Under this standard, the offender fee must be deemed "punitive" if it "bears no rational relation to the goal of compensating the [State] for its loss." *Id.* at 449, 109 S.Ct. at 1902.[7] To state the question in this case is to answer it.

The offender fee statute mandates that "[m]onies received under this section will accrue first to the department of corrections for use to offset costs of the specific care or service." R.I. Gen. Laws § 42–56–38. The

implementing regulations in turn make clear that the offender fee was rationally designed to promote its legislative objective; *viz.,* reimbursement of the Department for its costs in providing the required supervisory services to its probationers and parolees. Regulation 1.12.01(IV)(K). Furthermore, the implementing regulations explicitly state that the offender fees collected from probationers and parolees must be deposited in a restricted account, exclusively available for defraying Department costs in affording offenders the required community supervision.[8] Thus, the legislative intent actuating the offender fee program is entirely remedial and its practical effect is neither retributive nor deterrent in nature. Under the *Halper* test, therefore, the offender fee is not punitive.[9]

## III

### CONCLUSION

For the foregoing reasons, the district court judgment is reversed and the case is

public safety), *cert. denied,* 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991); *Tillinghast v. Howard,* 109 R.I. 497, 287 A.2d 749, 752 (1972) ("[I]t is for the purpose of giving a convicted accused the opportunity for rehabilitation that he retains his liberty and is placed on probation."). Second, the monthly fee is not imposed on all offenders sentenced to probation, but only those actually receiving the supervisory services whose costs are defrayed by the fee. Regulation 10.07.03(II)(C)(3).

Thus, the offender fee differs materially from the fees at issue in a case relied upon by appellees and cited by the district court, *see In re Petition of Delaware for a Writ of Mandamus,* 603 A.2d 814 (Del.1992), in which monetary sanctions were imposed on the offenders *at sentencing.* The fees involved in that case were blanket surcharges, calculated as percentages of the criminal penalty, fine, or forfeiture imposed at sentencing, rather than reimbursements for the costs of providing services to the offenders. As the *Halper* Court explained, "it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7.

7. We note no contention, and no evidence, that the $15.00 monthly fee exceeds the costs associated with providing Department supervision of offenders released into the community. *See Halper,* 490 U.S. at 452, 109 S.Ct. at 1903.

8. Moreover, as already noted, *see supra* p. 781, the offender fee is imposed only on probationers

and parolees currently under Department supervision in the community, not upon probationers in "banked" status. Regulation 10.07.03(II)(C)(3). Thus, rather than a blanket fee assessed at sentencing without regard to the commencement or duration of any term of community supervision, the Rhode Island offender fee is directly and rationally related to recouping the State's costs in providing supervision to the individual offenders for whose benefit the services are rendered. *Cf. In re Petition of Delaware for a Writ of Mandamus,* 603 A.2d 814 (Del. 1992); note 4 *supra.*

9. The fact that nonpayment of the fee can be brought to the attention of the court at a parole/probation revocation hearing, *see supra* p. 781, does not transform the fee into punishment. While revocation of parole/probation might constitute punishment, the Supreme Court explained in *Morales* that courts must determine whether a legislative change "produces a sufficient risk of increasing the measure of punishment." *Morales,* —— U.S. at ——, 115 S.Ct. at 1603. A legislative change which creates only a "speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment" is insufficient to raise the *ex post facto* specter. *Id.* As the district court recognized, any possible link between nonpayment of the offender fee and the revocation of parole/probation is too attenuated to render the offender fee violative of the Ex Post Facto Clause, *Taylor,* 908 F.Supp. at 101, especially since *inability to pay* constitutes grounds for waiver.

remanded for further proceedings on appellees' procedural due process claims under state and federal law. The parties shall bear their own costs.

**SO ORDERED.**