**William D. OWENS III, Plaintiff,**

v.

**Kathleen SEBELIUS, et al., Defendants.**

**No. CIV.A. 04–3178KHV.**

United States District Court, D. Kansas.

Feb. 15, 2005.

William D. Owens, III, Wichita, KS, pro se.

Brian D. Sheern, Kansas Attorney General, Topeka, KS, for Defendants.

## ORDER

VRATIL, District Judge.

Plaintiff, an inmate at the Winfield Correctional Facility in Winfield, Kansas, brings suit against Kathleen Sebelius (Governor of the State of Kansas), Roger Werholtz (Secretary of the Kansas Department of Corrections) and Phill Kline (Attorney General of the State of Kansas).[1]

---

1. Plaintiff has also filed claims against John and Jane Doe defendants who are responsible

Plaintiff alleges that the Kansas state regulation which imposes a $25 monthly supervision fee on parolees is an unlawful bill of attainder, violates his rights under the *ex post facto* clause and the Fifth, Eighth and Fourteenth Amendments of the United States and Kansas Constitutions. This matter is before the Court on *Defendants' Motion To Dismiss* (Doc. # 14) filed December 29, 2004.

Pursuant to D. Kan. Rule 6.1(d)(2) and Fed.R.Civ.P. 6(a), plaintiff had until January 30, 2005 to file a response to defendants' motion to dismiss. *See* defendants' *Certificate Of Service* (Doc. # 16) (on January 7, 2005, defendants re-served motion and memorandum on plaintiff at correct address). To date, plaintiff has not responded to defendants' motion. Pursuant to D. Kan. Rule 7.4, "[i]f a respondent fails to file a response within the time required by Rule 6.1(d), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." For this reason and those set forth below, the Court sustains defendants' motion.

Plaintiff's complaint is virtually identical to the complaints in *Miller v. Sebelius,* No. 04–3053–KHV and *Taylor v. Sebelius,* No. 04–3063–KHV. The Court recently sustained defendants' motions for summary judgment in those cases. *See Memorandum And Order* (Doc. # 45) filed December 22, 2004 in *Miller v. Sebelius,* No. 04–3053–KHV; *Memorandum And Order* (Doc. # 49) filed December 29, 2004 in *Taylor v. Sebelius,* No. 04–3063–KHV. For similar reasons, the Court sustains defendants' motion to dismiss in this case.

for instituting and implementing corrections policies, procedures and practices.

**2.** The state district court sentenced defendant to four to ten years in the two cases involving

### Standards For Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. *See Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

### Factual Background

Plaintiff's complaint alleges the following facts:

In December of 1992, after plaintiff was convicted of possession of cocaine in two separate cases and forgery in a third case, he went into the custody of the Kansas Department of Corrections ("KDOC").[2] *See Complaint* (Doc. # 1) filed June 1, 2004; *see also State v. Owens,* 19 Kan. App.2d 773, 773–74, 875 P.2d 1007, 1007–08 (1994). On March 5, 1999, the Kansas Parole Board ("KPB") released plaintiff on

cocaine possession, with the terms to run consecutive, and one to two years on the forgery case, with the term to run consecutive to those in the other two cases.

parole. Pursuant to K.A.R. § 44–5–115(b)—which imposes parole supervision fees in the amount of $25.00 per month—KDOC charged plaintiff monthly supervision fees of $25.00 through July of 2000, when plaintiff returned to KDOC custody after his parole revocation.

On March 27, 2001, the KPB again released plaintiff on parole and charged him monthly supervision fees of $25.00. On May 1, 2001, plaintiff returned to KDOC custody after another parole revocation.

On August 2, 2001, the KPB again released plaintiff on parole and charged him monthly supervision fees of $25.00. On October 9, 2001, plaintiff returned to KDOC custody after another parole revocation.

On March 4, 2002, the KPB again released plaintiff on parole and charged him monthly supervision fees of $25.00. On September 18, 2002, plaintiff returned to KDOC custody after yet another parole revocation.

On July 21, 2003, the KPB again released plaintiff on parole and charged him monthly supervision fees of $25.00. On November 24, 2003, plaintiff returned to KDOC custody after a fifth parole revocation.

Plaintiff apparently did not pay all of his monthly supervision fees. Internal Management Policy and Procedure ("IMPP") § 04–106 provides that outstanding fees from a prior incarceration or post-incarceration supervision shall be assessed upon the offender's re-entry into KDOC custody. Pursuant to that policy, KDOC de-

ducted $325.00 from plaintiff's inmate trust account to satisfy his outstanding supervision fees from January of 2000 through November of 2003.[3]

Plaintiff is currently in KDOC custody.

Plaintiff alleges that (1) K.A.R. § 44–5–115(b) violates the constitutional prohibition on *ex post facto* laws because at the time of his offense, Kansas did not impose a supervision fee; (2) as applied to him, K.S.A. § 75–52,139 and K.A.R. § 44–5–115(b) are unlawful bills of attainder; (3) by deducting supervision fees from his prison inmate account, defendants subjected him to cruel and unusual punishment, unlawfully took his property in violation of the takings clause of the Fifth Amendment, and violated his rights to procedural due process and equal protection under the Fifth and Fourteenth Amendments. *See Complaint* (Doc. # 1) at 4–16.

### *Analysis*

Before addressing plaintiff's claims, the Court briefly outlines the relevant statutory and regulatory provisions. In 1994, the Kansas legislature passed a bill which authorized the secretary of KDOC to impose certain fees on inmates and former inmates on supervision. Specifically, the law provides as follows:

The secretary of corrections is hereby authorized to adopt rules and regulations under which offenders in the secretary's custody may be assessed fees for various services provided to offenders and for deductions for payment to the crime victims compensation fund.

---

**3.** IMPP § 04–106 was originally implemented on December 7, 1998. *See* IMPP § 04–106, attached as Exhibit A to *Defendants' Response To The Court's November 23, 2004 Order To Supplement The Record With IMPP 04–106* (Doc. # 44 in *Miller v. Sebelius*, No. 04–3053). IMPP § 04–106 has been amended several times since December 7, 1998, but the substantive policy has remained the same: collection of outstanding supervision fees when an offender re-enters KDOC custody or as soon as the offender is able to pay the outstanding fees. *See* Exhibits A through E to *Defendants' Response To The Court's November 23, 2004 Order To Supplement The Record With IMPP 04–106* (Doc. # 44 in *Miller v. Sebelius*, No. 04–3053).

K.S.A. § 75–52,139. Based on the statute, the secretary of KDOC passed a regulation which provides in relevant part as follows:

(1) Each offender under the department's parole supervision .... shall be assessed a supervision service fee of ... $25.00 dollars per month. * * *

(2) A portion of the supervision service fees collected shall be paid to the designated collection agent or agents according to the current service contract, if applicable. Twenty-five percent of the remaining amount collected shall be paid on at least a quarterly basis to the crime victims' compensation fund. The remaining balance shall be paid to the department's general fees fund for the department's purchase or lease of enhanced parole supervision services or equipment including electronic monitoring, drug screening, and surveillance services.

(3) Indigent offenders shall be exempt from this subsection of the regulation, as set forth by criteria established by the secretary in an internal management policy and procedure.

K.A.R. § 44–5–115(b)(1)–(3).

IMPP § 14–107 sets forth procedures to collect supervision fees. See IMPP § 14–407, attached as Exhibit J to *Martinez Report* (Doc. # 27 in *Miller v. Sebelius*, No. 04–3053). It provides that indigent offenders are not required to pay a supervision fee. See *id.* at 1. IMPP § 12–127 provides that KDOC shall issue basic personal hygiene items (including a soft toothbrush, toothpaste, disposable razor, comb or pick and soap) to indigent inmates (any inmate with a cumulative spendable amount of less than $12.00). See IMPP § 12–127, attached as Exhibit M to *Martinez Report* (Doc. # 27 in *Miller v. Sebelius*, No. 04–3053).

IMPP § 04–106 provides that outstanding fees or charges from a previous incarceration or post-incarceration supervision shall be assessed upon the offender's reentry into KDOC custody. See IMPP § 04–106.

## I. Cruel And Unusual Punishment Claim

Plaintiff alleges that by deducting supervision fees from his prison inmate account, defendants subjected him to cruel and unusual punishment. See *Complaint* (Doc. # 1) at 11–15. Specifically, plaintiff alleges that because of the deductions, he was subjected to "undue hardships" and "denied the opportunity to maintain his sanitary hygienic needs." *Id.* at 11.

IMPP § 12–127 provides that indigent inmates shall receive basic personal hygiene items including a soft toothbrush, toothpaste, disposable razor, comb or pick and soap. Plaintiff has not alleged that defendants ever denied him free basic hygiene supplies. The Tenth Circuit recently rejected an Eighth Amendment claim based on similar allegations. See *Sellers v. Worholtz*, 86 Fed.Appx. 398, 2004 WL 119882 (10th Cir.2004). In *Sellers*, plaintiff alleged that the automatic deduction of fees from his inmate account to satisfy his obligations under K.A.R. § 44–5–115 constituted cruel and unusual punishment. The Tenth Circuit held that plaintiff could apply every month for an indigent package which contained necessary hygiene products, and that he therefore failed to state a claim for violation of the Eighth Amendment. *Id.* at 400. This Court likewise finds that because plaintiff has not alleged that defendants denied his request for basic hygiene supplies, plaintiff has failed to state a claim for cruel and unusual punishment.

Even if plaintiff alleged that defendants denied him basic hygiene supplies, he has not alleged that defendants acted with deliberate indifference to his health and

safety. The Constitution does not permit inhumane prisons, but neither does it mandate comfortable ones. To state an Eighth Amendment claim, plaintiff must allege that prison officials have shown "deliberate indifference" to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, plaintiff must allege that defendants knew of and disregarded an excessive risk to inmate health and safety. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff has not alleged facts from which a jury might conclude that defendants denied him the basic hygiene items available to indigent inmates or that such a deprivation placed his health and safety at risk. Moreover, to the extent that the temporary deprivation of basic hygiene items could constitute an Eighth Amendment violation, plaintiff has not alleged that defendants were aware of an "excessive risk" to his health and safety. *Id.; see Words v. Graves,* 1997 WL 298458, *2–3 (D.Kan. 1997) (no cruel and unusual punishment where plaintiff did not allege inability to pay medical co-pay under K.A.R. § 44–5–115(c) and regulation had exception for indigent prisoners); *see also Waters v. Bass,* 304 F.Supp.2d 802, 811 (E.D.Va. 2004) (no cruel or unusual punishment based on deduction of room and board fees from inmate account); *Breakiron v. Neal,* 166 F.Supp.2d 1110, 1115–16 (N.D.Tex.2001) (health care deductions from inmate trust account not deliberate indifference). The Court therefore sustains defendants' motion to dismiss plaintiff's cruel and unusual punishment claim.

## II. *Ex Post Facto* Claim

■ Plaintiff alleges that K.A.R. § 44–5–115(b) violates the constitutional prohibition on *ex post facto* laws because at the time of his offense, Kansas did not impose a supervision fee. *See Complaint* (Doc. # 1) at 4–6; *see also* U.S. Const., art. 1, § 9, cl. 3; art. 1, § 10, cl. 1. "An ex post facto law is 'any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Raymer v. Enright,* 113 F.3d 172, 174 (10th Cir.1997) (quoting *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). In determining whether a new regulation violates the *ex post facto* clause, the Court focuses on whether the change alters the definition of criminal conduct or increases the penalty by which a crime is punishable. *See Cal. Dep't of Corrs. v. Morales,* 514 U.S. 499, 506–07 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

The Kansas Supreme Court has held that K.A.R. § 44–5–115(a), which imposes a $1.00 monthly fee to administer an inmate trust account, does not violate the *ex post facto* clause. *See Roark v. Graves,* 262 Kan. 194, 196–98, 936 P.2d 245, 247–48 (1997). Specifically, *Roark* held that "[t]he fee is charged for services rendered, has not been shown to be excessive, is reasonably related to legitimate penological goals, and is not an additional punishment." *Id.* at 198, 936 P.2d at 248. *Roark* relied in part on the testimony of Charles Simmons, former Secretary of KDOC, who testified before the Senate Judiciary Committee in support of the bill which authorized the collection of fees for services from offenders in KDOC custody. Simmons testified in part as follows:

> Assessing fees to offenders is based on a belief that offenders should be accountable for their actions, and contributing to the costs of incarceration or supervision are important components of establishing that accountability.

*Id.* at 196, 936 P.2d at 247–48. *Roark* concluded that K.A.R. § 44–5–115(a) is reasonably related to the goals outlined by Simmons and that the procedure reason-

ably prepares inmates for reentry into the social and economic system of the community upon leaving the correctional institution. *See id.* at 196, 936 P.2d at 248.

Like the monthly maintenance fee in *Roark,* the $25.00 monthly supervision fee for parolees does not violate the *ex post facto* clause. Both fees are based on the same authorizing statute, K.S.A. § 75–52,-139, and are part of the same regulation, K.A.R. § 44–5–115(a)–(b). Based on *Roark* and other cases which have addressed parole supervision fees, the monthly supervision fee cannot be described as punitive in nature. *See Glaspie v. Little,* 564 N.W.2d 651, 654 (N.D.1997) ($30.00 monthly fee to defray cost of supervision is civil fee for services); *Taylor v. State of R.I.,* 101 F.3d 780, 783–84 (1st Cir.1996) ($15.00 monthly supervision fee was civil, not criminal, in nature); *Frazier v. Mont. State Dep't of Corrs.,* 277 Mont. 82, 920 P.2d 93, 95–96 (1996) ($10.00 monthly supervision fee was "civil administrative fee," not punishment); *Pennsylvania v. Nicely,* 536 Pa. 144, 638 A.2d 213, 216 (1994) ($25.00 monthly supervisory fee is administrative in nature and not intended to be punitive). The Kansas legislature did not intend that the fee be punitive and the fee is not so extreme as to constitute punishment. *See Taylor,* 101 F.3d at 783. The supervision fee is modest and the regulation specifically exempts indigent offenders. Finally, collection of the supervision fee is reasonably related to legitimate penological interests, *i.e.* holding offenders accountable for their actions, *see Roark,* 262 Kan. at 197, 936 P.2d at 247–48, and the fee bears a rational relation to the goal of compensating the State of Kansas for its costs. *See Taylor,* 101 F.3d at 784. Because the monthly supervision fee is not punitive in nature, the Court sustains defendants' motion to dismiss plaintiff's *ex post facto* claim.

## III. Bill Of Attainder Claim

▮ Plaintiff alleges that as applied to him, K.S.A. § 75–52,139, K.A.R. § 44–5–115(b) and IMPP § 04–106 are unlawful bills of attainder. *See Complaint* (Doc. # 1) at 9–11. The United States Constitution states that "[n]o State shall ... pass any Bill of Attainder." U.S. Const. art. 1, § 10. In deciding whether a statute inflicts forbidden punishment, the Court looks at three elements: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish. *Selective Serv. Sys. v. Minn. Pub. Interest Research Group,* 468 U.S. 841, 852, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). For reasons explained above with regard to plaintiff's *ex post facto* claim, the Court concludes that K.S.A. § 75–52,139 and its implementing regulation (K.A.R. § 44–5–115(b)) do not impose a penalty which is within the historical meaning of legislative punishment; that the statute and regulation reasonably further nonpunitive purposes such as offender accountability and rehabilitation; and that the legislative record does not indicate an intent to punish.[4] *See supra* text part II; *see also Lynce v. Mathis,* 519 U.S. 433, 440 n. 12, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (prohibitions on bills of attainder restrict legislature from singling out disfavored persons and meting out summary punishment for past conduct); *Selective Service,*

---

4. To the extent that plaintiff also challenges IMPP § 04–106, that policy statement does not impose any punishment—it merely sets forth the procedure for the collection of outstanding fees under K.A.R. § 44–5–115(b). The Court addresses below plaintiff's procedural due process challenge.

468 U.S. at 852, 104 S.Ct. 3348 (burdens on citizens not necessarily punishment). Accordingly, under Rule 12(b)(6), the Court dismisses plaintiff's claim that K.S.A. § 75–52,139, K.A.R. § 44–5–115(b) and IMPP § 04–106 are unlawful bills of attainder.

## IV. Procedural Due Process Claim

 Plaintiff alleges that by taking money from his inmate trust account without notice and an opportunity to be heard, defendants denied him procedural due process. *See Complaint* (Doc. # 1) at 6–8. Plaintiff alleges that defendants should have followed the garnishment procedures set forth in K.S.A. § 60–701 *et seq.* Plaintiff's complaint is too vague and conclusory to state a claim for violation of his constitutional right to procedural due process. Plaintiff has a property interest in the money in his inmate account, *Elliott v. Simmons,* 100 Fed.Appx. 777, 779, 2004 WL 1240915 (10th Cir.2004), but he does not set forth specific federal, state or constitutional procedural safeguards that defendants allegedly violated. *See Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 519–20 (10th Cir.1998) (procedural due process claim must set forth procedures due under law). The collection process of IMPP § 04–106 is essentially an alternative to state garnishment procedures under K.S.A. § 60–701 *et seq.* Plaintiff has not alleged that IMPP § 04–106 requires defendants to follow state garnishment procedures in collecting outstanding fees from inmates in state custody. Absent an allegation that defendants violated applicable procedural safeguards, plaintiff has failed to state a claim for violation of his procedural due process rights. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (*pro se* plaintiff must allege sufficient facts on which recognized legal claim could be based; conclusory allegations without supporting factual averments are insufficient).

To the extent plaintiff attempts to challenge the fact that KDOC does not grant a pre-deprivation hearing, he does not state a claim. In determining what process is due, courts must balance (1) the private interests that will be affected by the official action, (2) the risk of erroneous deprivation, and (3) the government's interest, including the fiscal and administrative costs of additional process. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As to the first factor, the private interest that is affected is plaintiff's interest in avoiding an erroneous assessment of $25.00 against his inmate trust account. Such an interest is not compelling because plaintiff has an opportunity to contest an erroneous assessment through the prison grievance process and KDOC provides free items and services to indigent inmates (such as basic hygiene supplies, medical care, writing supplies and postage). *See Mackey v. Montrym,* 443 U.S. 1, 2, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (interest in continued possession and use of driver's license, pending outcome of hearing, not compelling in light of further post-suspension hearing and limit of 90–day suspension). As to the risk of erroneous deprivation, the collection of supervision fees involves routine matters of accounting with a low risk of error. *See Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410, 422 (3d Cir. 2000) (collection of fees from inmates for cost of housing). In addition, before an individual is re-incarcerated, he receives notice of the assessment. *See* IMPP § 14–107 (probation officer must give offender notice and pre-printed envelope for payment of supervision fees). Because plaintiff had prior notice of the fees and the collection of outstanding fees involves routine matters of accounting, the risk of erroneous deprivation is minimal.

As for the third factor, the Court must consider both the government interest in

the policy that the state action advances and the government interest in minimizing administrative and fiscal burdens. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. Here, the collection of supervision fees advances a policy of offender accountability and rehabilitation, and reimburses the State of Kansas for services provided. To require a pre-deprivation hearing before the collection of outstanding supervision fees (of which the offender has prior notice) would substantially increase the burdens of enforcement. *See Tillman,* 221 F.3d at 422 (no pre-deprivation proceeding required for deduction of room and board fees from inmate account; proceeding would be impractical, significantly increase transaction costs and hinder correctional facility's ability to reduce costs of incarceration).

Plaintiff has not alleged that the prison grievance program is inadequate to address erroneous assessments to his inmate account. *See Elliott,* 100 Fed.Appx. at 779, 2004 WL 1240915, *1 (prison grievance procedures sufficient to satisfy procedural due process for erroneous assessments on inmate account); *Tillman,* 221 F.3d at 422 (same); *see also Smith v. Colo. Dep't of Corrs.,* 23 F.3d 339 (10th Cir.1994) (due process satisfied when adequate post-deprivation remedy exists); *Winters v. Bd. of County Comm'rs,* 4 F.3d 848, 856 (10th Cir.1993) (deprivation of procedural due process not complete unless and until state fails to provide adequate constitutionally essential procedures), *cert. denied,* 511 U.S. 1031, 114 S.Ct. 1539, 128 L.Ed.2d 192 (1994); *Woodley v. Dep't of Corrs.,* 74 F.Supp.2d 623, 627 (E.D.Va.1999) (rejecting due process challenge based on payment of supervision costs). Therefore the Court dismisses plaintiff's procedural due

process claim for failure to state a claim on which relief can be granted.

## V. Equal Protection Claim

■ Plaintiff alleges that by taking money from his inmate trust account, defendants denied him equal protection. *See Complaint* (Doc. # 1) at 15–16. Plaintiff does not allege any differential treatment by defendants and he therefore fails to plead the material elements of an equal protection claim.[5] *See Hall,* 935 F.2d at 1110; *Tonkovich,* 159 F.3d at 533 (at heart of equal protection claim must be allegation of differential treatment from those similarly situated); *see also Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) ("class of one" must show intentional treatment different from others similarly situated and lack of rational basis to explain difference in treatment).

To the extent plaintiff alleges that defendants engaged in selective enforcement of K.A.R. § 44–5–115(b) and IMPP § 04–106, he has not stated a claim because he has not alleged that defendants singled him out by use of impermissible considerations "such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City Of Madison, Miss.,* 213 F.3d 267, 277 (5th Cir.2000); *see Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001). In general, provided that a regulation is rationally based, the failure to enforce it "with complete equality does not of itself infringe the constitutional principle of equal protection." *D'Acquisto v. Washington,* 640 F.Supp. 594, 625 (N.D.Ill.1986). For reasons explained above, the Court finds that K.A.R. § 44–5–115(b) is reasonably related

5. Plaintiff alludes to the fact that defendants treated him differently than they treated parolees convicted after the KDOC implemented K.A.R. § 44–5–115(b). *See Complaint* (Doc. # 1) at 16. Because plaintiff has not stated a claim for violation of the *ex post facto* clause, he cannot state a claim for violation of the equal protection clause based on his status as an individual who was convicted before the supervision fee regulation was implemented.

to the goal of offender accountability. Therefore plaintiff has failed to state a claim for violation of equal protection rights. *See Waters,* 304 F.Supp.2d at 811 (no equal protection claim based on payment of room and board fees from inmate account); *Woodley,* 74 F.Supp.2d at 627 (rejecting equal protection challenge based on payment of supervision costs).

## VI. Takings Claim

Plaintiff alleges that deduction of outstanding monthly supervision fees constitutes an unlawful taking of property. *See Complaint* (Doc. # 1) at 8–9. A reasonable user fee is not a taking, however, if it is imposed for the reimbursement of the cost of government services. *United States v. Sperry. Corp.,* 493 U.S. 52, 63, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). Here, although 25 per cent of the supervision fee (after collection costs) goes to the crime victims compensation fund, the remaining portion of the fee funds KDOC's purchase or lease of enhanced parole supervision services and equipment (including electronic monitoring, drug screening and surveillance services).[6] *See* K.A.R. § 44–5–115(b)(2). Plaintiff does not allege that the supervision fee is unreasonable or unrelated to the cost of inmate supervision, and the Court must therefore dismiss his takings claim for failure to state a claim on which relief can be granted. *See Vance v. Barrett,* 345 F.3d 1083, 1089–90 (9th Cir. 2003) (fee for administration of inmate account not taking where plaintiff did not allege that fee was unreasonable or unre-

---

6. Plaintiff's complaint does not allege that the supervision fee is invalid because a portion of it goes to the crime victims compensation fund. Accordingly, the Court need not determine whether this aspect of the statute is invalid as an unlawful taking of property. In any event, the portion of the supervision fee which goes to the crime victims compensation fund appears to be valid because it cannot be characterized as "a forced contribution to general governmental revenues." *Webb's*

lated to administration of account); *Dudley v. United States,* 61 Fed. Cl. 685, 689 (2004) (extraction of filing fees from prisoner accounts not taking); *see also Sperry,* 493 U.S. at 60, 110 S.Ct. 387 (user fee need not be precisely calibrated to use that party makes of government services); *Massachusetts v. United States,* 435 U.S. 444, 463, n. 19, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978) (user fee must be fair approximation of cost of benefits supplied).[7]

**IT IS THEREFORE ORDERED** that *Defendants' Motion To Dismiss* (Doc. # 18) filed December 29, 2004 be and hereby is **SUSTAINED.**

---

*Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 163, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980).

7. Defendants also seek dismissal because (1) sovereign immunity bars any official capacity claims; and (2) qualified immunity bars any individual capacity claims. The Court need not reach these arguments because it rules in favor of defendants on other grounds.