In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 13-1225, 13-1233

TOBIN J. MUELLER and GREGORY D. DEANGELIS,[*]

*Plaintiffs-Appellees / Cross-Appellants*,

*v.*

RICK RAEMISCH, Secretary of the Wisconsin Department of
Corrections, *et al.*,

*Defendants-Appellants / Cross-Appellees*.

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 10-C-911 — **William C. Griesbach**, *Chief Judge*.

ARGUED SEPTEMBER 12, 2013 — DECIDED JANUARY 24, 2014

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. Before us are cross-appeals in a
case in which two convicted sex offenders challenge aspects

[*] In the original caption of this case, the plaintiffs were referred to as
"John Doe of Connecticut" and "John Doe of Florida." We have replaced
those pseudonyms with the plaintiffs' real names because, as explained
at the end of this opinion, we do not think this a proper case in which to
allow litigants to litigate under pseudonyms.

of Wisconsin's statutory scheme of sex offender registration, notification, and monitoring as violating the prohibition in Article I, section 10 of the federal Constitution against states' enacting ex post facto laws, that is, retroactive criminal punishments. The scheme, which we'll call the monitoring act, was enacted after the plaintiffs committed and were convicted of the sex offenses that made them subject to it, though before they'd finished serving their sentences.

The district judge disposed of the case on summary judgment. 895 F. Supp. 2d 897 (E.D. Wis. 2012). He ruled that the $100 annual registration fee that the monitoring act imposes on convicted sex offenders such as these plaintiffs is a fine, which is a form of punishment and so cannot constitutionally be imposed on persons who committed their sex crimes before the fee provision was enacted. *Id.* at 909. He upheld the other provisions of the act. *Id.* at 913. The state appeals his ruling on the registration fee, and the plaintiffs his ruling upholding the act's other provisions that they had challenged.

Plaintiff Mueller, who now lives in Connecticut, had been convicted in Wisconsin in 1993 of two counts of sexual contact with a girl under 16 when he was 37 years old. He had been sentenced to four years in prison (but that part of his sentence had been suspended) followed by six years of probation, which he completed without incident in 1999. He is married and has four adult children. Plaintiff Deangelis, who lives in Florida, had been twice convicted in Wisconsin of sexual assaults, one that he had committed in 1985 (when he was 20 years old) and the other in 1993. He was sentenced to five years in prison the first time and one year the second time. Recently widowed, he has two young children, one

adult child, and several stepchildren (children of his deceased wife).

The Supreme Court upheld a similar sex offender monitoring act (Alaska's) in *Smith v. Doe*, 538 U.S. 84 (2003); see also *American Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1052–53 (9th Cir. 2012); *Doe v. Bredesen*, 507 F.3d 998, 1005 (6th Cir. 2007); *A.A. ex rel. M.M. v. New Jersey*, 341 F.3d 206, 213–14 (3d Cir. 2003); cf. *United States v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011). But Wisconsin's monitoring act contains impositions and restrictions not found in Alaska's act. The registration fee is one. Others include a prohibition against working or volunteering in jobs that would require the offender "to work or interact primarily and directly with children under 16 years of age," Wis. Stat. § 948.13(2)(a) (this provision applies only to child sex offenders, however, and therefore not to Deangelis); filming or photographing children under 17 without the written, informed consent of the children's parents or guardians, § 948.14(2)(a); and changing one's name, or using a name other than the name by which one is designated in the records of the Wisconsin Department of Corrections, § 301.47(2). Other lifetime impositions and prohibitions challenged by the plaintiffs are having to give notice of any change of address before moving to the new address; having to report all email addresses, websites, and internet screen names; and having to respond to all correspondence from the Department of Corrections by mail within 10 days. §§ 301.45(2)(a)(6m), (2)(g), (4m).

Not only do the plaintiffs no longer live in Wisconsin; they say they don't intend ever to return to that state, however briefly. And they don't express concern that if they were on a flight to Chicago diverted for reasons of weather

to Milwaukee, they might fall into the clutches of the Wisconsin Department of Corrections for failure to comply with some provision of the monitoring act. What then have they to gain from a decision invalidating the act? If nothing, the district court had no jurisdiction over their suit.

No issue of standing was raised in the district court, or in the briefs in this court that the parties filed initially; and so we asked the parties to advise us "whether the plaintiffs have standing to sue in federal court under Article III of the Constitution, given that neither plaintiff is domiciled, lives, works, attends school, or is physically present in Wisconsin. The answer may depend on (a) whether Wisconsin requires non-residents who lack a current connection with the state to register with its system; (b) whether Wisconsin's criminal provisions governing registered sex offenders, including Wis. Stat. § 301.47 (prohibiting registered sex offenders from changing their names), § 948.14 (restricting registered sex offenders from photographing children), and any other substantive restrictions apply as a matter of state law to conduct that occurs wholly outside Wisconsin by non-residents with no current connection to the state; (c) whether, if present in state law, either a duty to register or substantive limitations on registrants' conduct would be unconstitutionally extraterritorial; and (d) whether—however the foregoing questions are answered—the state's threat to prosecute the plaintiffs itself creates standing."

The state advises us that "where, as here, a registrant commits the covered sex offense in Wisconsin and then moves out of state, the law requires continued registration" until their death if, like the plaintiffs in this case, their crimes "trigger[ed] lifetime registration." The registration require-

ment can, the state argues, be applied to persons with no current connection to Wisconsin without violating the principle that a state cannot in general regulate conduct that occurs outside its borders, see, e.g., *State v. Cardwell*, 718 A.2d 954, 963 (Conn. 1998); *People v. Blume*, 505 N.W.2d 843, 845–46 (Mich. 1993); *Simpson v. State*, 17 S.E. 984, 985 (Ga. 1893), because Wisconsin residents retain an interest in keeping track of past sex offenders wherever the offenders now live. For example, it may help restore peace of mind to the victim of a sex offense to learn where the offender is living—or induce precautionary measures if the victim discovers that the offender, although no longer a Wisconsin resident, lives just across the Wisconsin border, in Michigan, Illinois, Iowa, or Minnesota.

Whether Wisconsin is right or wrong in arguing that it has constitutional authority to enforce its registration requirement against nonresidents is not the immediate issue, however. For there to be standing, it is enough that the state intends to enforce the requirement against the plaintiffs and that its grounds for thinking it has the constitutional authority to do so are not so preposterous that the plaintiffs can simply ignore the state's threat to prosecute them if they don't keep on registering annually till death shall part them from the Wisconsin registry of sex offenders. The plaintiffs have received frequent letters from the Department of Corrections reminding them that they must comply with the registration requirements for life and that failure to do so is a felony. So there is some danger they'll be prosecuted if they fail to comply, and a threat of harm is sufficient to confer standing to sue, *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298–99 (1979); *520 South Michigan Ave. Associates, Ltd. v. Devine*, 433 F.3d 961, 963 (7th Cir. 2006), while

their decision to pay the $100 annual fee is a rational response to the threat and is therefore an actual harm caused them by the challenged law.

The state acknowledges limitations on its power to punish violations of other provisions of the monitoring act, such as working with and photographing minors. Wisconsin law provides that a person is subject to "prosecution and punishment" for conduct that occurs wholly outside the state only if, so far as bears on this case, "the person does an act with intent that it cause in this state a consequence set forth in a section defining a crime." Wis. Stat. § 939.03(1)(c). This provision applies straightforwardly to the registration requirement, because a nonresident's failing to comply has a criminal consequence in Wisconsin—namely a failure to register with the state's Department of Corrections. But the state acknowledges that "the plaintiffs could not be prosecuted for wholly out-of-state acts of working with minors, or of intentionally capturing a representation of a minor. The defendants are not aware of a prosecution having been attempted under these statutes for wholly out-of-state conduct" (citations omitted). The state further acknowledges that "no prosecution would occur going forward, if the conduct was wholly out of state." And the plaintiffs do not allege any intention of engaging in conduct in Wisconsin that would have "a consequence set forth in a section defining a crime." The combination of disclaimers by the state and disclaimers by the plaintiffs negates standing to challenge these two provisions of the monitoring act. Compare *Mink v. Suthers*, 482 F.3d 1244, 1254–55 (10th Cir. 2007), with *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 485–86 (8th Cir. 2006), and *New Hampshire Right to Life Political Action Committee v. Gardner*, 99 F.3d 8, 16–17 (1st Cir. 1996).

True, the disclaimers the state has made to us are not found in the letters that the Department of Corrections sends the plaintiffs. It's also true that the Supreme Court of Wisconsin interprets Wis. Stat. § 939.03, the statute that defines the territorial reach of Wisconsin criminal law, broadly. Only one element of a crime (for example, intent to kill, in a homicide case) need occur in Wisconsin for the state to assert jurisdiction to punish the crime. *State v. Anderson*, 695 N.W.2d 731, 746 (Wis. 2005); see also *Poole v. State*, 208 N.W.2d 328, 330–31 (Wis. 1973); *State v. Inglin*, 592 N.W.2d 666, 672 (Wis. App. 1999). But another way to interpret the letters to the plaintiffs is as reminders of what the plaintiffs may face if—but only if—they return to Wisconsin. One can imagine an argument that if they interacted with or photographed a minor outside Wisconsin who happened to be a Wisconsin resident they could be accused of having committed an element of the crime (under Wisconsin law) in Wisconsin. But they don't argue that. They argue that Wisconsin might try to extradite them for interacting with or photographing minors who had no actual or potential contact with the state—and that is an unreasonable fear. *Younger v. Harris*, 401 U.S. 37, 42 (1971); *J.N.S., Inc. v. Indiana*, 712 F.2d 303, 305–06 (7th Cir. 1983); *Seegars v. Gonzales*, 396 F.3d 1248, 1252 (D.C. Cir. 2005); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56–57 (1st Cir. 2003).

The state insists that it can enforce against the plaintiffs the prohibition against a Wisconsin sex offender's changing his name, irrespective of any intent by him to cause a forbidden consequence in Wisconsin, for the same reasons that the state argues that it can enforce the registration requirement itself—indeed, the prohibition of name changing is, like the $100 fee, a part of that requirement. But the plaintiffs

do not have standing to challenge this prohibition, because, while opposing it, neither of them expresses any intention of changing his name.

They have standing to complain (as they do) about the bother of having to comply with the monitoring act's requirements of continual updating of information that they supply to the sex offender registry. But these requirements are deemed not to be punitive (and hence not to trigger the constitutional prohibition of ex post facto laws), *Smith v. Doe*, *supra*, 538 U.S. at 97–102, unlike the state law that we invalidated in *Doe v. Prosecutor, Marion County*, 705 F.3d 694, 699, 703 (7th Cir. 2013), which forbade access to social-networking websites.

But what about the $100 annual registration fee? The state calls it a fee, the plaintiffs a fine. Fee and fine are two quite different animals. A fee is compensation for a service provided to, or alternatively compensation for a cost imposed by, the person charged the fee. By virtue of their sex offenses the plaintiffs have imposed on the State of Wisconsin the cost of obtaining and recording information about their whereabouts and other circumstances. The $100 annual fee is imposed in virtue of that cost, though like most fees it doubtless bears only an approximate relation to the cost it is meant to offset. A fine, in contrast, is a punishment for an unlawful act; it is a substitute deterrent for prison time and, like other punishments, a signal of social disapproval of unlawful behavior.

Labels don't control. A fine is a fine even if called a fee, and one basis for reclassifying a fee as a fine would be that it bore no relation to the cost for which the fee was ostensibly intended to compensate. That is a common basis on which a

fee is reclassified as a tax. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 728–30 (7th Cir. 2011) (en banc); *Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128, 132 (7th Cir. 1981). But it seems acknowledged in this case that if the $100 annual fee is not a bona fide fee, it is a fine rather than a tax.

The burden of proving that it is a fine is on the plaintiffs, and since they have presented no evidence that it was intended as a fine, compare *Smith v. Doe*, *supra*, 538 U.S. at 92; *Taylor v. Rhode Island*, 101 F.3d 780, 782–83 (1st Cir. 1996), they cannot get to first base without evidence that it is grossly disproportionate to the annual cost of keeping track of a sex offender registrant—and they have presented no evidence of that either. They haven't even tried. They could have sought discovery of the cost structure of the sex offender registration system, but didn't do so. In our order requesting supplemental briefing we invited them to search for such evidence in the public domain, specifying information that "shows either the incremental or the average annual cost to Wisconsin of an additional registrant." All that the plaintiffs came up with are two reports by the Department of Corrections to the Wisconsin legislature explaining the Department's decision to fix the fee initially at $50 (2006), raised to $100 in 2008 (the maximum fee authorized, Wis. Stat. § 301.45(10)). The reports list fees in other states, do not discuss costs, and—the part fastened on by the plaintiffs—indicate that the fee would reduce the amount of money that the state would have to allocate to the Department of Corrections to finance its activities. Obviously if the Department had no fee income, it would need a higher appropriation; we don't see how that elementary point bears on the reasonableness of the fee. Moreover, the implication, if

the fee income is being used to defer other expenses of the Department of Corrections, is not that it is a fine but that it is a tax.

Wisconsin's $100 fee is the same as that of a neighboring state, Illinois, albeit higher than the fees charged by Idaho ($80) and Massachusetts ($75). See 730 ILCS 150/3(c)(6); Idaho Code § 18-8307(2); Mass. Gen. Laws ch. 6, § 178Q. This sample of states—all we've been given—is too small to allow an inference that $100 is so high that it must be a fine. The Department of Corrections lists the tasks involved in maintaining the sex offender registry, and the list is formidable. It includes gathering information, notifying registrants of required updates and verifications, processing the responses to the notifications, allocating the information across potential users that have different rights of access (for example, law enforcers versus the general public), and maintaining and updating data that the Department makes available to the public. We don't know how close the average annual cost per registrant is to $100, and thus whether it falls so far short as to support an inference that it's really a fine.

There is an illuminating contrast with the fee issue in a case argued before us on the same day that this case was argued. At issue in *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), was Indiana's practice of taking custody of unclaimed property, trying to find the owner, and if it finds him returning the property to him—but if the unclaimed property is an unclaimed interest-bearing bank account, keeping the interest that has accrued. This we held a taking of property, not a fee for service, because the relation between accrued interest and the services provided by the state with respect to unclaimed property was completely arbitrary (the state did not

attempt to defend the taking of the interest income as a tax). We are given no reason to think that the same is true of the $100 annual fee at issue in this case.

The district judge thought it a fine because it is intended "to offset the cost of providing a service that is intended solely for the benefit of the general public. The fact that the assessments are used to offset the costs of monitoring the offenders does not eliminate the penal aspect of the assessment. … To be sure, the State has a non-punitive purpose for wanting to collect money for such a purpose, but to single out only individuals who have prior convictions for sexual assaults as the sole source of such funds can only be seen as punitive." 895 F. Supp. 2d at 909. We disagree. The fee is intended to compensate the state for the expense of maintaining the sex offender registry. The offenders are responsible for the expense, so there is nothing "punitive" about making them pay for it, any more than it is "punitive" to charge a fee for a passport. If there were no passports, there would be no passport office, and no expenses of operating such an office. The state provides a service to the law-abiding public by maintaining a sex offender registry, but there would be no service and hence no expense were there no sex offenders. As they are responsible for the expense, there is nothing punitive about requiring them to defray it. See *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 299–300 (4th Cir. 2009); *Taylor v. Rhode Island*, *supra*, 101 F.3d at 782–84; cf. *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 251–52 (4th Cir. 2005); *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 420–21 (3d Cir. 2000).

The last question we put to the parties in our order asking for supplemental briefs was "whether the plaintiffs may

be permitted to litigate anonymously, given that their convictions are matters of public record and that both plaintiffs are currently registered in Wisconsin, which makes their names and other information freely available. It would help the court if the parties stated how the public obtains access to information about offenders registered in Wisconsin's system."

The defendants in their supplemental brief state, as they have stated throughout this litigation, that they have no objection to the plaintiffs' litigating pseudonymously. But neither, they add, do they have any objection to the plaintiffs' being required to litigate under their actual names. And they point out in answer to the second part of our question that the names of sex offender registrants are available from a variety of public sources, including the Department of Corrections' website or its 24-hour automated phone service, or by calling the sex offender registry office during business hours, or by accessing the website of "Family Watchdog," a private service (and not the only one) that enables the viewer to search for sex offender registrants by address, zip code, or name.

In support of their request for permission to litigate pseudonymously the plaintiffs state that they "and their families had experienced shunning and harassment after they were publicly listed as registered sex offenders." But in tension with that submission they argue that the existing sources of information about their sex offender status "are simply not comparable to the notoriety that would arise from being a named plaintiff in a lawsuit challenging sex offender laws." No doubt a sex offender's filing a suit challenging a sex offender law attracts fresh attention to him, but

even if the increment in notoriety is substantial we don't think he should be permitted to litigate anonymously. Secrecy in judicial proceedings, including concealment of parties' names, is disfavored. See, e.g., *Doe v. Elmbrook School District*, 658 F.3d 710, 721–24 (7th Cir. 2011), affirmed, 687 F.3d 840, 842–43 (7th Cir. 2012) (en banc); see generally *GEA Group AG v. Flex-N-Gate Corp.*, Nos. 13-2135, -2594, 2014 WL 97289, at *8 (7th Cir. Jan. 10, 2014). Secrecy makes it difficult for the public (including the bar) to understand the grounds and motivations of a decision, why the case was brought (and fought), and what exactly was at stake in it. Sometimes these concerns are overridden, as in (most pertinent to this case) cases in which the plaintiff is a victim of sexual abuse, especially a child victim; disclosure could induce the unwanted attentions of other sexual abusers or gawking or ridicule by other kids. Yet even in such cases we've required some evidence of an incremental effect on the victim of disclosure of his or her name in a judicial opinion. *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005).

The plaintiffs in this case are not victims of sexual abuse, but perpetrators of it. The social value of their claim to privacy is therefore weaker than that of victims. And the benefits of pseudonymous litigation are bound to be smaller to perpetrators. The names of victims of sexual offenses do not appear in a sex offender registry, while even if the name of a sex-offender plaintiff does not appear in the caption of a lawsuit, information provided in the judicial decision—age and marital and family status of the plaintiff, state of his current residence, dates and nature of his crimes and sentences—will often be sufficient to enable the curious to obtain the plaintiff's name from the web. The plaintiffs' complaint about the publicity that their status as sex offenders received

in the states in which they now live, and of how that publicity had disrupted their personal and working lives, leaves us to wonder what additional harm the revelation of their being named plaintiffs in this case could do.

What is true is that if the plaintiffs had prevailed and thus knocked out the registration provisions, access to information about them would shrink because an online search of the registry would no longer find their names, and so the benefits to them of litigating pseudonymously would be greater. But these would be private rather than social benefits; anyway they lost.

To summarize, the judgment of the district court is reversed insofar as the annual registration fee is concerned; and is modified to place dismissal of the plaintiffs' other challenges to the Wisconsin monitoring act and its implementation on grounds of standing, and to make the dismissal without prejudice. Otherwise the judgment is affirmed. Finally, we have reformed the case caption to replace the "John Does" with the plaintiffs' names.