FILED
United States Court of Appeals
Tenth Circuit

January 13, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MICHAEL WHITINGTON,

Plaintiff - Appellant,

v.

JOE ORTIZ; AL ESTEP; SGT.
OLSEN; SGT. HUFF; C/O BARNES;
LT. JOHN CORDOVA; LT. THOMAS
BULLARD; LT. ADELMAN;
STEVEN GREEN; STEPHEN
LOCKHART; and DELAYNE
TORNOWSKI,

Defendants - Appellees.

No. 07-1425

(D. Colorado)

(D.C. No. 06-cv-00759-LTB-CBS)

---

**ORDER AND JUDGMENT**[*]

---

Before **McCONNELL**, **ANDERSON**, and **BRORBY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

This protracted[1] state inmate case is before us a second time,[2] still at the initial pleading stage. Michael Whitington, an inmate within the Colorado Department of Corrections ("CDOC") system, filed this 42 U.S.C. § 1983 conditions of confinement action against Joe Ortiz, the Executive Director of the CDOC, two wardens, an assistant warden, and seven corrections officers, alleging a violation of his Eighth Amendment rights.[3] He alleges that because of the CDOC's regulations and practices regarding inmate indigency and finances, he was required to purchase hygiene items from his own account but was left with no funds to do so if he paid for the costs of constitutionally protected litigation. The

[1]The complaint in this case was filed on April 20, 2006. The appellate process has significantly contributed to the elapsed time.

[2]We previously reversed a dismissal for failure to exhaust administrative remedies and remanded for further proceedings. See Whitington v. Ortiz, 472 F. 3d 804 (10th Cir. 2007) ("Whitington I").

[3]The complaint does not list the full names of these defendants, nor does the district court's decision and judgment. From the defendants' brief and at some points in the body of the complaint and in other documents, we glean the following fuller identifications of the defendants, as they were denominated at the time of filing: Joe Ortiz, Executive Director of the Colorado Department of Corrections; Al Estep, Warden of the Limon Correctional Facility and the Fort Lyon Correctional Facility; Steven Green, Warden of the Delta Correctional Facility; Delayne Tornowski, Assistant Warden of the Limon Correctional Facility; Stephen Lockhart, Captain in charge of Unit 4 at the Limon Correctional Facility; Thomas Bullard, an outside party, serving as a Step III Grievance Officer; Sgt. Eric Olson, Sergeant in living Unit 4 at the Limon Correctional Facility; Sgt. Melissa Huff, Sergeant in living Unit 4 at the Limon Correctional Facility; C/O Donna Barnes (as indicated infra n.6), Correctional Officer in living Unit 4 at the Limon Correctional Facility; Lt. John Cordova, a Case Manager in Unit 8 at the Fort Lyon Correctional Facility; and Lt. Lisa Adelman, a Case Manager in living Unit 4 at the Limon Correctional Facility.

-2-

result, he claims, was that he was unable to buy and, despite requests, was not given, soap, toothpaste, toothbrushes, and razors for about 230 days of a thirteen-month period. This deprivation, which resulted from a claimed forced choice between constitutional rights, led to what he describes as bumps and rashes on his face and body, swollen and infected gums causing great pain for weeks, loss of a tooth, the need for an operation on his gums, loss of weight from not being able to eat due to pain in his mouth, and being compelled to remain dirty, stinking, and humiliated. Mr. Whitington's suit seeks compensatory and punitive damages, an injunction or restraining order, and declaratory relief.

The district court, adopting the thorough report and recommendation of the magistrate judge, dismissed the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.[4] Claims against the individual defendants were also dismissed on various additional grounds, but largely resting on the complaint's failure to state a claim. The district court also denied Mr. Whitington's motions for a preliminary injunction and a restraining order, leave to file a second amended complaint, and for the appointment of counsel.

---

[4]Because the district court adopted as its own the magistrate judge's Report & Recommendation ("R&R"), any references and citations to the R&R hereafter are as if they were to the district court's own opinion, unless otherwise specified.

Mr. Whitington appeals from the denial of those motions and the dismissal of his action. For the reasons stated below, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

### A.

Mr. Whitington filed his amended complaint, consisting of 191 numbered, and additional unnumbered, paragraphs, on July 17, 2006.[5] The complaint covers roughly a thirteen-month period from May 2005 through mid-June 2006, and includes separate allegations directed at Mr. Whitington's incarceration at four CDOC facilities: the Limon Correctional Facility ("Limon") from at least May 2005 to August 24, 2005; the Fort Lyon Correctional Facility ("Fort Lyon"), from August 24, 2005, to November 10, 2005; the Kit Carson Correctional Center (a private contract facility) ("Kit Carson"), from November 15, 2005, to June 2, 2006; and the Sterling Correctional Center ("Sterling"), from June 2, 2006, to the date of filing. He remained at Sterling at the time of filing.

The complaint generally alleges a denial of hygiene items throughout the period in question; but the only specific items specified repeatedly are soap, toothpaste, toothbrushes, and razors. Indeed, comparing ¶ 171 of the complaint

---

[5]References to the complaint throughout this opinion refer to the first amended complaint.

with ¶ 189 (seeking a permanent injunction for the supply of hygiene items), the complaint limits itself to soap, toothpaste and razors. In other contexts the complaint will sometimes refer to some but not all of the four articles mentioned. It may be that sometimes some but not all four of the items mentioned were available (thus no denial of that item for a period), or some sort of shorthand reference was meant. Regardless, we take it at this juncture that the complaint sufficiently alleges the denial of four hygiene items: soap, toothpaste, toothbrushes and razors. And references to hygiene items hereafter will refer to those items unless otherwise stated.

An institution-by-institution and defendant-by-defendant breakdown of the complaint's allegations does not easily translate to the general claim of 230 days' denial of hygiene items. See Compl. ¶¶ 134, 136. But, Mr. Whitington does specify that at Limon, the defendants/corrections personnel Adelman, Huff, Barns[6], and Olsen (staff member Harding is also mentioned, but not named), were personally responsible for the denial in question for 136 days, and Lt. Cordova was personally responsible for forty days. Warden Estep, Assistant Warden Tornowski, Captain Lockhart (in charge of Unit 4 at Limon), and grievance hearing officer Bullard are generally charged with 230 days' denial. Specific recitals, by date and type of request, are set out for defendants Adelman, Huff,

---

[6]The complaint spells the name "Barns." However, since the correct spelling appears to be "Barnes," we will use that spelling.

Barnes and Olsen. On June 1, 2005, Case Manager ("C/M") Adelman refused a request for hygiene items, saying Mr. Whitington did not qualify for indigent status (therefore entitlement to free hygiene items) because he received state pay. Id. ¶ 15. On June 10, 2005, Sgt. Olsen refused a request for hygiene items, and on July 1 Sgt. Olsen was specifically made aware of Mr. Whitington's lack of hygiene items but did not act. Id. ¶¶ 25, 28 and 29. On July 6, 2005, Mr. Whitington sent a written request to C/M Adelman for hygiene items but received no response. On, July 8, 2005, Sgt. Huff turned down a request for a razor and soap. Id. ¶ 36. On July 9, a second request was sent to C/M Adelman which was denied on July l2, due to the receipt of inmate pay. Id. ¶¶ 37-39. On July 15 and 26, Case Officer Barnes and Sgt. Olsen again denied requests for hygiene items, citing Mr. Whitington's choice to spend his money on litigation. Id. ¶¶ 40, 41. Generally, Sgt. Huff and Sgt. Harding (not named as a defendant) are charged with denials of hygiene items for the entire month of July. Id. ¶ 42. During the month of August 2005, C/M Adelman turned Mr. Whitington away again (for the reasons stated above) on August 9, and furnished him with a step I grievance form. Id. ¶¶ 45-47. Finally, with respect to the Limon facility, Warden Estep, Assistant Warden Tornowski, and Captain Lockhart, are alleged to have had authority and oversight over staff and failed to train and direct them regarding indigency and the need to supply hygiene items. Officer Bullard, as a Step III

Grievance Officer, is similarly charged with failing to use his authority to correct the hygiene situation. Id. ¶¶ 135, 136.

At Fort Lyon, the complaint alleges requests to and denials by C/M Cordova on September 15, October 18, and November 8, 2005. Id. ¶¶ 57, 67, and 75. During those months, Mr. Whitington claims he was without hygiene items most of the time; that his gums were infected and painful; that his front teeth were loose; that he attempted to see the dentist and get antibiotics from a doctor, with no success; that he wrote to Warden Estep about the denials of his requests for hygiene items; and that, successively, Assistant Warden Tornowski and Captain Lockhart (in their capacities as hearing officers) turned down his grievances. Id. ¶¶ 69-76.

From November 15, 2005, to June 2, 2006, while Mr. Whitington was incarcerated at Kit Carson, he alleges intermittent, but not continuous, denial of hygiene items, just an insufficient amount, and (in great detail) insufficient money to purchase hygiene items. Id. ¶¶ 86-123. He did see the dentist during that time and the infection and other problems in his mouth were treated. Id. ¶ 99.[7] Also during the period, Officer Bullard, acting as a Step III Grievance Officer, refused to supply or direct prison personnel to supply Mr. Whitington

---

[7]As we noted in Whitington I, the complaint does not make a claim for denial or delay of medical or dental care.

with hygiene items.  Id. ¶ 122.  No defendant is named who was directly connected with Kit Carson (a privately contracted facility) during the period.

On June 2, 2006, Mr. Whitington was transferred to Sterling.  The complaint alleges that from April 20 to June 19, he was without hygiene items; but that on June l9, C/M Manning furnished him two bars of soap.  Id. ¶¶ 127-29. No individuals connected with Sterling are named.  But the complaint recites that Mr. Whitington had no money to purchase hygiene items for the month of June. Id. ¶ 131.

Finally, there are general allegations against named defendants Joe Ortiz, the Executive Director of the CDOC, Steven Green, Warden at the Delta Correctional Facility, charged with reviewing the CDOC hygiene policies, and others in authority mentioned above:  Warden Estep, Assistant Warden Tornowski, Captain Lockhart, and Officer Bullard.  The complaint claims that they abused their authority both in establishing allegedly defective inmate financial accounting policies and in failing to correct their deficiencies, which resulted in Mr. Whitington being charged with having to buy his own hygiene items, even though they knew or should have known he had no ability to do so and still pursue his protected litigation.  Id. ¶¶ 133-36.

**B.**

The complaint places the responsibility for the alleged deprivations on CDOC policies and practices which require virtually all inmates to purchase many basic hygiene items from the canteen and pay for them out of a small stipend placed monthly by the CDOC in inmates' accounts in the inmate banking system. The problem, as recited in the complaint, is that the money deposited in the inmates' accounts is not fully available for hygiene item purchases because it is subject to a variety of deductions and charges. Id. ¶¶ 1-13, 132-34, 142-183. The result, it is averred, is that Mr. Whitington either had to forego exercising his right of access to the courts (resulting in costs and fees deductible from the inmate's account), or, upon exercise of that right, be denied access to basic hygiene items.

The details described in the complaint are as follows. CDOC Reg. 850-14 states that indigent inmates will be furnished basic hygiene items, but, among other things, an inmate will not be classified as indigent if the inmate has received "offender pay" in the preceding thirty days. See, e.g., id. ¶¶ 152-53. In turn, CDOC Reg. 850-03, provides that inmates are expected to work and will be paid according to grade level, but that even inmates who refuse to work will be given inmate pay at the lowest grade with the "pay" being credited by computer to the inmate's account on a monthly basis. See id. ¶¶ 133, 143, 146, 161, 173. That process results in an inmate classification of non-indigency by definition,

and shifts to the inmate the responsibility of purchasing his or her own hygiene items. For that purpose the amount of "offender pay" at the lowest grade level is $0.23 per day not to exceed twenty-three days, or a minimum of $5.29 being deposited monthly in an inmate's account. Id. ¶ 143. According to the complaint, the cost of "the minimum of hygiene items (for a month) from the state operated canteen department . . . (is) . . . [t]wo tubes of toothpaste at .93¢ a piece, three soaps at .41¢ and one pack of razors at $1.19." Id. ¶ 171. That totals $4.29 per month (although the complaint variously refers to $4.32 or $4.34), for purchases. The cost of a toothbrush is not listed.

As indicated above, the problem, as recited in the complaint, is that the monthly "offender pay" deposited into the inmate's account (together with deposits from other sources such as family gifts, for instance) can be immediately subject to deductions and charges for present and preexisting obligations of the inmate. Such things as fines, medical co-pay obligations (which can cost up to $10.00 per visit, id. ¶ 133), postage, and photocopy costs, are charged to the inmate's account even if the charges result in a negative balance. Id. ¶¶ 133, 181-82; CDOC Reg. 200-02. Fifty percent of any deposit into an account having a negative balance is immediately applied to reduce that balance. Compl. ¶¶ 146, 152, 160, 164, 169, 181-182; CDOC Reg. 200-02(IV)(E)(2). The remainder of the deposit is then subject to a further twenty percent reduction for any amounts due for restitution or child support, and a further twenty percent reduction for

-10-

court filing fees. CDOC Reg. 200-02 (IV)(E)(2).[7] And, finally, some current charges for copying and postage, for instance, can be delayed from posting to a negative account balance and immediately applied in full to any deposit. According to Mr. Whitington, these charges and deductions have frequently depleted his account to zero, leaving no part of his "offender pay" available for the purchase of hygiene items. Compl. ¶ 164.

In dozens of paragraphs which will not be repeated here, the complaint details expenses in the foregoing categories and deductions from his account almost week by week during the period of the suit. But there is no month by month listing and identification of outstanding obligations. The complaint does at least give examples. Thus, it is alleged, "[t]he cost for copy and postage fees for the plaintiff's habeus [sic] Corpus and post-conviction pleadings for June and July, 2005 were approximately $71.00. The cost to copy the plaintiff's opening

---

[7]Colo. Rev. Stat. § 16-18.5-106(2) states that the CDOC "may fix the time and manner of payment for court ordered costs, surcharges, restitution, time payment fees, late fees, and any other fines . . . resulting from a criminal case" and authorizes the CDOC to "direct that *a* portion of the deposits into such inmate's bank account be applied to any outstanding balance" from a criminal case. Colo. Rev. Stat. § 16-18.5-106(2) (emphasis added). The only limit on the CDOC's discretion is that "*[a]t a minimum,* the executive director shall order that twenty percent of all deposits into an inmate's bank account, including deposits for inmate pay shall be deducted and paid toward any outstanding order from a criminal case or for child support." Id. (emphasis added). The CDOC interprets this statute as authorizing it to deduct between 20% and 99.9% of incoming deposits into an inmate's account for payment toward court judgments from a criminal case or for child support. See Backus v. Ortiz, 246 Fed. Appx. 561, 2007 WL 2452692 (10th Cir. 2007), cert. denied, 128 S. Ct. 960 (2008).

brief to the supreme court was $22.00." Id. ¶ 181. And, with respect to his state action against prison officials, Mr. Whitington alleges that "[t]he cost to copy and send the complaint was approx. $7.00." Id. ¶ 182. Plus, the cost to certify the record was $15.00, the cost to copy and mail the opening brief was $8.00, and the filing fee was $136.00. Id. As a summary, Mr. Whitington alleges that he owes amounts for restitution, filing fees, postage and copying in such sums that even if he did not incur any further such obligations, his account would be in deficit for at least another two years. Id. ¶¶ 168, 181, 182. Thus, he states that his ability to purchase hygiene items was reduced to almost nothing during the period of the suit, and he "will not have enough money to purchase ample soap, toothpaste, and razors for the next 7 months and would never be able to purchase toothpaste or razors because the cost for these items exceeds .69¢. The plaintiff will only be able to purchase one soap each month that will last about 20 days." Id. ¶ 182.

Yet, despite having his inmate account depleted leaving no or insufficient funds to purchase hygiene items, and despite calling his problem to the attention of the defendants, including the submission of grievances and applications for indigent status, Mr. Whitington alleges that his requests were virtually always denied on the ground that he was receiving "offender pay" during the month (not available to him after deductions and charges) and was choosing to spend his money on litigation rather than hygiene. Id. ¶¶ 13, 15, 25, 26, 28, 38-40, 57, 59, 61, 65-67, 70-72.

## C.

The legal actions asserted to be the necessary cause of obligations accruing against Mr. Whitington's account are described in the complaint mostly in general terms. The complaint recites that "[t]he plaintiff's legal postage and copies were encurred [sic] to prosecute his post-conviction claims in his Denver County and Adams County felony convictions, two Habeus Corpuses [sic] challenging his conditions of confinement and for civil complaints challenging violations of the plaintiff civil rights." Id. ¶ 4. The "Previous Lawsuits" section of the complaint lists only one action, apparently a federal suit against a corrections officer claiming excessive use of force. But the other actions referred to above are alluded to elsewhere in the complaint as well. Id. ¶¶ 181, 182.

## II. DISCUSSION

As indicated above, the district court dismissed the constitutional violation claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. The court's decision regarding the individual defendants, including qualified immunity, rested chiefly upon that determination. The court also denied preliminary injunctive relief, a motion to amend the complaint a second time, and a motion for the appointment of counsel. Mr. Whitington challenges all those rulings.

## A. Eighth Amendment

We review de novo a Fed. R. Civ. P. 12(b)(6) dismissal of a complaint. See Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007). Our standard for reviewing the dismissal of a pro se prisoner's complaint for failing to state a claim is solicitous. We must accept as true all the factual allegations contained in the complaint, and liberally construe those allegations in favor of determining that a claim has been stated. Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-21 (1972). In this exercise, we must be mindful that Fed. R .Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and, further, that "[s]pecific facts are not necessary; . . . only . . . 'fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson, 127 S. Ct. at 2200 (further citations omitted). We must interpret the allegations and "'any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff.'" Martinez v. Garden, 430 F.3d 1302,1304 (10th Cir. 2005) (quoting Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002)).

## 1.

It is well established that the Eighth Amendment "imposes duties on . . . [prison] officials, . . . [to] provide humane conditions of confinement; prison

officials must ensure that inmates receive adequate food, clothing, shelter, and medical care. . . .” Farmer v. Brennan, 511 U.S. 825, 832 (1994). Such duties include provision for basic hygiene. See Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996) (holding prisoner’s claim that prison officials’ refusal to provide hygiene items, including access to toothpaste, causing “his gums to bleed and recede and tooth decay” states a claim for a violation of the Eighth Amendment); Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008).

But “a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, ‘sufficiently serious.’” Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). That is, the deprivation must deny “the minimal civilized measure of life’s necessities.” Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment. See Hudson v. McMillian, 503 U.S. 1, 9 (1992).

And, subjectively, the “prison official must have a ‘sufficiently culpable state of mind.” Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297). Thus, “a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.” Id. at 837; Tafoya, 516 F.3d at 916. The subjective requirement is one of deliberate indifference.

Wilson, 501 U.S. at 298-303.  See Tafoya, 516 F.3d at 916; Penrod, 94 F.3d at 1405-06.

The district court did not analyze the complaint under the deliberate indifference "to a sufficiently substantial 'risk of serious damage to . . . [the inmate's] future health'" standard.  Farmer, 511 U.S. at 843 (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)).  Nor did the district court address the nature of the legal actions for which Mr. Whitington alleged he had a protected right to incur costs and expenses.  See Lewis v. Casey, 518 U.S. 343, 354-55 (1996) (inmates are entitled to tools to vindicate their constitutional right to access the courts for the purpose of pursuing post-conviction and habeas relief claims, and, to a more limited extent, civil rights claims).

Rather, the district court concluded that there was no deprivation of hygiene items by the defendants at all, but that "Mr. Whitington's own allegations indicate that he has chosen to spend his available funds on postage and copying related to his several lawsuits rather than on hygiene items."  R&R at 9.  Further, the court determined that "[a]s hygiene items are inexpensive, Mr. Whitington had sufficient funds each month to purchase such items."  Id. at 10 (citing various paragraphs of the complaint).  And, the court determined  that "Mr. Whitington's allegations indicate that he purchased and received hygiene items."  Id. (also citing various paragraphs of the complaint).  Finally, the district court did make the conclusory statement, in the alternative, and without analysis, that Mr.

Whitington "has not alleged that Defendants acted with deliberate indifference to his health and safety." Id. at 11.

For the most part, the district court apparently assumed for the purposes of disposition that, as recited in the complaint, Mr. Whitington in fact was without some or all of the hygiene items in question for substantial periods of time; that he suffered physical harm (infections, rashes, and so forth); and that he in fact complained personally to corrections staff about not having hygiene items, and that staff, having been made aware of the lack of hygiene items, directly rebuffed his requests.

Since the district court stopped its analysis at the threshold, concluding that Mr. Whitington's problems were self-inflicted, the deprivations and harms alleged were not, and did not need to be, examined either objectively or, as to each defendant, subjectively.

In support, the district court, justifiably, relied on decisions from our court and other courts, which were adverse to inmate plaintiffs bringing remarkably similar challenges to department of corrections regulations and practices. See Smith v. Cooper, 2 F.3d 1161, 1993 WL 307650 (10th Cir. 1993) (unpublished) (framed, on appeal, as an access-to-the-courts issue, but in the district court also claiming that using money for postage left the inmate with no money to buy hygiene items); see also Taylor v. Sebelius, 189 Fed. Appx. 752, 757, 2006 WL 2037158 (10th Cir. 2006) (challenging deduction of obligations from inmate

-17-

account, leaving insufficient funds to purchase hygiene products); Sellers v. Worholtz, 86 Fed. Appx. 398, 2004 WL 119882 (10th Cir. 2004) (same); Scott v. Case Manager Owens (SCF), 80 Fed. Appx. 640, 643, 2003 WL 22520655 (10th Cir. 2003) (challenging requirement that inmates who receive pay must purchase their own hygiene items); Owens v. Sebelius, 357 F. Supp. 2d 1281, 1285-86 (D. Kan. 2005) (lack of hygiene products); Breakiron v. Neal, 166 F. Supp. 2d 1110, 1115-16 (N.D. Tex. 2001) (challenging health care deductions from inmate's account). In addition, the defendants cite Gross v. Koury, 78 Fed. Appx. 690, 2003 WL 22384925 (10th Cir. 2003) (alleging insufficient funds to buy hygiene products due to litigation expenses).

Each of those cases is distinguishable largely due to vague, inapposite or inadequate factual allegations in the complaints. Thus, in Smith, the court first noted that the inmate failed to support his allegations that he was denied the opportunity to mail legal, as opposed to personal, letters; and, noted that, in any event, having "to choose occasionally between stamps and hygiene items is 'certainly no more a restriction than that which any indigent pro se non-prisoner must face.'" Smith, 1993 WL 307650, at *4 (quoting Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978)). In contrast, the complaint in the case before us does not claim a denial of access to the courts, and does allege more than an occasional deprivation of hygiene products.

In Gross the inmate did allege actual injury, but without sufficient factual data. Reviewing the complaint, we said:

> [T]he crux of his [Gross's] argument rests simply on vague and general allegations that he lacks sufficient funds to cover both the costs of litigation and personal hygiene products. In neither his Amended Complaint nor his appeal brief does he provide any specific allegations as to the actual costs of the hygiene products in comparison to his actual or future litigation costs, or make an allegation that his litigation costs are necessary for the purpose of successfully pursuing his claims.

Gross, 78 Fed. Appx. at 694. As the recitation of facts, above, shows, Mr. Whitington's complaint does not suffer from those deficiencies.

In Scott, unlike this case, the inmate claimed that "prison officials . . . did not allow him to use one-half of his inmate pay to purchase hygiene products and postage stamps from the prison canteen." Scott, 80 Fed. Appx. at 641. We held, however, that Scott "has not alleged any injury whatsoever, and he was unable to buy hygiene supplies only because he neglected to pay for them when he had available funds in his inmate account." Id. at 643.

In Sellers the inmate mounted a constitutional challenge to the deduction of obligations from amounts deposited in the inmate's account, and claimed a resulting deprivation of hygiene products. We held that deductions were not unconstitutional and that if no money was left in the inmate's account the inmate could apply every month for an indigent package. Here, Mr. Whitington specifically disavows any challenge to the CDOC's right to deduct outstanding

-19-

financial obligations from an inmate's account.  See Appellant's Reply Br. at 10.

("The plaintiff does not and has never claimed that the act of taking any funds

from his account and not giving him any funds violated any of his rights. . . .")

And, the complaint recites that the defendants largely (there were something like

two exceptions) denied applications for an indigent package.

In Owens the district court held that officials could not be deemed to be

aware of an excessive risk when the deprivation of hygiene items was only

temporary.  That is hardly the case here.

In summary, under the standards governing our review, the allegations of

Mr. Whitington's complaint, outlined in detail above, state an Eighth Amendment

claim for the prolonged denial of hygiene products as a result of the pursuit of

constitutionally protected litigation with its associated expenses.  We respectfully

disagree with the district court's conclusions that, on the face of the complaint,

the alleged hygiene deprivation was simply a matter of choosing how to spend

limited funds, and that there were sufficient funds in Mr. Whitington's account in

any event to purchase hygiene items, or that he in fact received them.  We

likewise disagree with the conclusion that the complaint does not sufficiently

allege deliberate indifference to the situation.  Although the exact term was not

used, the mental state of at least most of the defendants was directly or by

implication alluded to.  The complaint does acknowledge that in many, if not

most, instances where corrections staff refused Mr. Whitington's requests for

hygiene products they did so because of CDOC governing regulations together with a review of Mr. Whitington's account to see if he had received money during the month as well as if the account showed a present balance. That impact on a deliberate indifference analysis was not explored by the district court and, presumably, will be in further proceedings, together with an inquiry into the latitude, if any, accorded corrections staff in working around atypical situations to solve problems.

## 2.

### a.  Dismissal of all defendants/no constitutional violation

The district court's conclusion that no Eighth Amendment violation was sufficiently alleged largely controlled the court's rulings with respect to the individual defendants. Including the defense of qualified immunity in its ruling, the district court stated as to all defendants: "Having concluded above that Mr. Whitington has failed to establish a violation of the Eighth Amendment, the court need proceed no further. . . ." R&R at 14. Accordingly, the district court granted motions to dismiss by all defendants, and dismissed the action for failing to state a claim. J., Doc. 127. Since, as indicated above, we conclude that the complaint does state a claim upon which relief may be granted, the omnibus judgment of dismissal in favor of all defendants, and judgment in their favor, on that ground

must be reversed.  However, dismissals were granted to some individual defendants on other grounds as well.

### b.  Defendants Tornowski and Lockhart

The district court ruled separately that the complaint, as regards defendants Tornowski and Lockhart, should be dismissed pursuant to Fed. R. Civ. P. 4(m) because they were not served.  Mr. Whitington does not dispute that ruling.  Accordingly, the dismissals as to those two defendants are affirmed.

### c.  Executive Director Joe Ortiz

Mr. Whitington sued Director Ortiz both in his official and his individual capacities.  Compl. ¶ 141.  The magistrate judge concluded that Director Ortiz was immune from a damages claim in his official capacity.  R&R at 5-6.  The judgment entered by the district court is broad enough to include a dismissal of the complaint as to defendant Ortiz on that ground.  J. at 1-2, Doc. 127 (unnumbered dispositive paragraphs one and four).  Mr. Whitington does not contest that ruling, and it is affirmed.  Mr. Whitington contends on appeal that it was error for the district court to dismiss the complaint as to Director Ortiz in his official capacity for injunctive purposes.[8]  But neither the magistrate judge nor

---

[8]This court has determined injunctive relief and punitive damages are available under 42 U.S.C. § 1997e(e), regardless of whether actual physical injury
(continued...)

the district court addressed that claim as to Director Ortiz, although the complaint was dismissed as to him on the ground that no Eighth Amendment violation had been stated. Since we reverse that holding, the action is reinstated as to Director Ortiz in his official capacity solely for potential injunctive purposes. We note that Mr. Ortiz is no longer the Executive Director of the Colorado Department of Corrections. That position is presently occupied by Mr. Aristedes Zavaras, who is automatically substituted for Mr. Ortiz in his official capacity.

As indicated, the complaint states a damages claim against Director Ortiz in his personal capacity. The magistrate judge ruled that the complaint should be dismissed as to Director Ortiz on that claim for failure to state the required personal involvement. R&R at 6-7. And the district court's judgment is broad enough to include such a dismissal.

We agree with the reasoning of the magistrate judge. Individual liability under 42 U.S.C. § 1983, must be based upon personal participation of the individual in the alleged constitutional violation. See Foote v. Spiegel, 118 F.3d 1416, 1423-24 (10th Cir. 1997); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993).

_____

[8](...continued)
occurs. See Perkins v. Dept. of Corrections, 165 F.3d 803, 808 & n.6 (10th Cir. 1999).

Mr. Whitington's allegations against Director Ortiz rest almost entirely on the premise that Director Ortiz was responsible for regulations which Mr. Whitington claims are unconstitutional and which, as applied, infringed Mr. Whitington's constitutional rights. Compl. ¶¶ 133, 142-63, 176. The complaint avers that Director Ortiz instituted the policies in question to save the Department money, for administrative convenience, and to discourage inmates from filing legal actions, and seeking medical care for which co-payment obligations are imposed. Id. ¶¶ 133, 159, 163, 186. He claims that Director Ortiz knew or should have known that the regulations in question were unconstitutional or were going to place an unconstitutional burden on all the inmates in the custody of the CDOC (more than 20,000), including him. Id. ¶¶ 133, 158. Referring to the Gross and Scott cases by their Colorado federal district court docket numbers, he states that such litigation over the same CDOC regulations as those in question here would have put Director Ortiz on notice of the unconstitutionality of those regulations.

First, Mr. Whitington lacks standing to attempt to re-regulate the entire CDOC system, or to sue directly or indirectly on behalf of anyone but himself. See Lewis, 518 U.S. at 349. To begin with, he must show actual injury to himself. Id. Second, the regulations in question are clearly not unconstitutional on their face. They are a permitted exercise of the State's right to manage its prisons. Id. at 360-61. Finally, the allegations of the complaint show only a

-24-

possible indirect involvement of the state prison administration in Mr. Whitington's personal situation, including whether and how much he might choose to incur expenses for litigation. The complaint fails, except for conclusory allegations, sufficiently to allege the necessary direct personal participation by Director Ortiz in Mr. Whitington's claimed injury. For the same reason—conclusory, general allegations—it also fails to connect Director Ortiz to a failure to train corrections personnel resulting in direct injury to Whitington. Certainly the existence of lawsuits over the regulations, especially ones which failed, as Gross and Scott did, does not connect Director Ortiz to participation in Mr. Whitington's affairs, either personally or by way of an alleged failure to train.

Accordingly, the dismissal of the action as to Director Ortiz is affirmed with the exception of the claim against him in his official capacity for possible injunctive relief.

### d. Steven Green

Mr. Green was warden at the Delta Correctional facility (a facility not involved in this suit) at the time this suit was filed. Mr. Whitington alleges only that Warden Green was delegated to review the CDOC's hygiene policy, and continued to approve the policy even though he knew that deductions from inmates' accounts might leave them without funds to purchase hygiene items.

Compl. ¶ 134. There is no allegation of direct personal involvement by Warden Green in Mr. Whitington's situation. The complaint seeks damages in Mr. Green's personal capacity, and makes no claim against him in his official capacity.

For the same reasons that the claim against Director Ortiz fails, the claim against Warden Green is also flawed. However, neither the magistrate judge nor the district court in its order addressed the sufficiency of the complaint as to Warden Green. Accordingly, we make no separate ruling as to him.

### e. Al Estep

Mr. Estep was, allegedly, Warden of the Limon and Fort Lyon Correctional Facilities at the times identified in the complaint. Mr. Whitington did not sue him in his official capacity, only in his personal capacity, seeking damages. The magistrate judge concluded that the complaint failed to state a claim against Warden Estep for the same reason that it failed to state a claim against Director Ortiz, i.e., that he was in a position of responsibility over the prisons and staff of those prisons, but had no direct personal participation in Mr. Whitington's situation. Mr. Whitington claims that Warden Estep knew that he had no money to purchase hygiene items and that staff had not given him hygiene items, and also that Warden Estep failed properly to supervise staff. Id. ¶¶ 72, 135. He also claims that he sent written complaints to Warden Estep but that Warden Estep

-26-

failed to act on them.  Id. ¶ 72.  Finally, he alleges that, as warden, Mr. Estep knew that the prisons did not have hygiene items on hand because Warden Estep failed to keep an adequate supply of free hygiene items in the prisons.

Normally such allegations would be insufficient to establish the required personal participation, and the fact that Mr. Whitington sent a grievance or written complaint directly to the warden of a large institution would be insufficient to make the necessary link.  However, two things make this claim somewhat different.  First, although CDOC Reg. 200-02, "Business Services," provides that the CDOC will control funds belonging to offenders, Reg. 200-2(IV)(A), Reg. 850-03, ch. "Offender Personnel," (re "Inmate Pay,") provides that:

> The administrative head, or designee, shall design and make readily available an annual pay plan for disbursement of the inmate pay allocation.  The plan may utilize a computerized system for the generation of inmate pay funds to each inmate's account.

Reg. 850-03(IV)(C).

* * *

> The administrative head is responsible to remain within the facility allocation for inmate pay.  If a facility overspends its inmate pay allocation, the following year's allocation may be reduced by that amount.  Extenuating circumstances may allow for relief from this restriction.

* * *

> Each facility or unit will design and implement an inmate pay plan that does not exceed the annual allocation and monitor the disbursement of funds on a quarterly basis.

Id. (V)(A) & (C).

Thus, while CDOC Reg. 850-14 provides that inmates who receive "inmate pay" must purchase their own hygiene products, it remains to be seen how much latitude each individual facility might have in the face of the CDOC Inmate Job Classification Manual (which sets the pay grades, with the lowest, Grade 1, permitting no more than $0.23 per day for a maximum of twenty-three days) to place more money in an inmate's account for hygiene purchases. Or, for that matter to claim some latitude in treating an inmate who receives inmate pay that goes to existing obligations as indigent for the purpose of furnishing free hygiene items.

And, second, the complaint repeatedly recites that when corrections staff refused free hygiene products, they did so after reviewing Mr. Whitington's inmate account to determine if he had received inmate pay (hence the interposition of Reg. 850-14), and whether at least some money showed as a balance. These two circumstances at least allow the complaint to cross over the low hurdle for stating a claim against Warden Estep with respect to whether or not he had flexibility to remedy individual inmate account or hygiene problems, assuming a legitimate reason to do so, and whether that flexibility can be shown to have a link to Mr. Whitington's situation. Doubtless that will be cleared up

-28-

early in further proceedings.  However, for now, the judgment dismissing the complaint against Warden Estep is reversed.

### f.  Thomas Bullard

Officer Bullard, serving as a temporary Step III Grievance Officer, denied Mr. Whitington's grievance regarding the denial of free hygiene items.  The complaint named him as a defendant in this action claiming that Officer Bullard was liable for damages because he allegedly failed to investigate the claimed lack of hygiene items, failed to order staff to furnish hygiene items, and failed to furnish them himself even though asked by Mr. Whitington to do so.  Compl. ¶ 122.  The magistrate judge ruled that such allegations failed to establish the necessary personal participation in Mr. Whitington's situation and recommended that Officer Bullard's motion for summary judgment or, in the alternative, for dismissal of the complaint as to him, be granted.  The district court adopted that recommendation and entered a judgment dismissing the complaint as to Officer Bullard.

Mr. Whitington appeals that judgment essentially repeating the allegations of the complaint, including the bare assertion that Officer Bullard had the authority to supply hygiene items and to direct staff to do so as well. There is no allegation that Officer Bullard had any authority with respect to official CDOC policy or that he personally participated in any of the deprivations that led Mr.

Whitington to file the grievance in the first place. While the panel decision is not binding on us, we agree with the reasoning in <u>Larson v. Meek</u>, 240 Fed. Appx. 777, 2007 WL 1705086 (10th Cir. 2007), that "the denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations." <u>Id.</u> at 780; <u>see also, Downing v. Clinton</u>, No. 05-177, 2006 WL 3054314, *15 (E.D. Wash. 2006); <u>Johnson v. G.E.O./Lawton Correctional Facility</u>, No. 04-1407, 2005 WL 2739212 (W.D. Okla. 2005).

The judgment of the district court dismissing the complaint as to defendant Bullard is affirmed.

## B. Preliminary Injunction/Restraining Order

Mr. Whitington filed a motion for a preliminary injunction or a restraining order "requiring the CDOC to supply the plaintiff with hygiene items in ample supply for each month or the funds to purchase the hygiene from the CDOC canteen department." R&R at 18. The district court denied the motion for multiple reasons, including the fact that it sought the very relief Mr. Whitington could obtain after a full trial, and the motion was a disfavored mandatory injunction which would alter the status quo. The court further found that there was an insufficient showing of a likelihood of success on the merits, there was no showing of irreparable harm, and Mr. Whitington failed to demonstrate that the

threatened injury outweighs damage to the opposing party or that the injunction would not be adverse to the public interest. Id.

We review a district court's denial of a preliminary injunction for abuse of discretion, which occurs where the court "commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002) (internal citations omitted). The standard for issuance of a preliminary injunction is well established:

> To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and [that] the injunction, if issued, will not adversely affect the public interest.

Gen. Motors Corp. v. Urban Gorilla, LLC, 500 F.3d 1222, 1226 (10th Cir. 2007); accord, Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d. 1280, 1283 (10th Cir. 1996). Mandatory injunctions and injunctions that would disturb, rather than preserve, the status quo are "specifically disfavored"; a party seeking such an injunction bears a "heightened burden" to show that "the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (per curiam), aff'd, 546 U.S. 418 (2006). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear

and unequivocal." Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003).

Even discounting that part of the district court's reasoning which relied upon its conclusion that no Eighth Amendment claim had been stated, we find no abuse of discretion in its denial of the motion for a preliminary injunction or restraining order. In his brief on appeal, Mr. Whitington largely turns the allegations of his complaint into self-proving facts, arguing that he has been without the hygiene items in question for enormous periods of time resulting in loss of a tooth, surgery on his gums, "contraction [of] Methiecillin-Resistant Staphyclococcus Aureus (MRSA)[9] that resulted in multiple serguries [sic], numerous treatments, permanent and disfiguring loss, [and] extensive and sever [sic] pain." Appellant's Op. Br. at 24. All of that remains to be seen.

There is a significant difference between getting over the minimal threshold of dismissal under Fed. R. Civ. P. 12(b)(6) by relying on the bare allegations of the complaint, and thereafter having to prove those allegations. Significantly different standards apply.

A host of questions surround Mr. Whitington's allegations, each requiring proof. Mr. Whitington must prove not only the fact and extent of his actual injuries, and the seriousness of them, sufficient to clear the Eighth Amendment

---

[9]The contract of MRSA is not alleged in the complaint; it appears in Mr. Whitington's brief on appeal.

hurdle, he must also link any injuries shown to exist to the denial of one or more of the four hygiene items in question. Thus, does a lack of toothpaste cause gum infections, loss of teeth, "MRSA," permanent and disfiguring loss, surgeries, and permanent pain? Does a lack of a toothbrush, or use of a toothbrush without toothpaste cause such harms? Could scrubbing one's teeth and massaging the gums with a soapy washcloth suffice for oral hygiene which, in any event, goes without dental floss? Is there any link between oral health and lack of soap for washing? And, what link, if any, is there between lack of soap, and bumps and rashes on the skin? Is such linkage, if any, affected by CDOC Reg. 850-11, which requires facilities for three hot showers a week? See CDOC Reg. 850-11(IV)(B)(l).

What link is there between lack of a razor and the harms in question or, for that matter, any requirement for Eighth Amendment purposes? See, e.g., Gross, 78 Fed. Appx. at 694 n.4 ("Mr. Gross fails to allege why the lack of a razor poses a health or safety risk to him, as required to allege a violation under the Eighth Amendment for inhumane conditions of confinement. Therefore, we find the district court also properly dismissed Mr. Gross' claim with respect to that item.").

Can each of the four hygiene items in question—soap, toothpaste, toothbrush and razor—be looked at in isolation for Eighth Amendment sufficiency, especially when searching for a linkage to claimed damage, or must

-33-

they always be evaluated in combination because they have a mutually reinforcing effect such as lack of a blanket and a cold cell? See Wilson, 501 U.S. at 304. It is difficult to see why toothpaste and razors, for instance, must be evaluated together. And, to what extant might Mr. Whitington's infections and other claimed harms be attributable to conditions such as hepatitis C, which he concedes he suffers from, Compl. ¶ 7, or other causes unrelated to the instant matter?

Then, moving from the questions of injury in fact and seriousness, Mr. Whitington must actually prove his lack of funds to buy hygiene items essentially from day to day over thirteen months, or at least from deposit of funds to deposit of funds. That will require an audit of his computerized inmate account for the period, and will include the question of whether there was enough money at any one time to purchase, for instance, a bar of soap at $0.41. And, if soap could have been purchased, how would the lack of the three (or two, or one) remaining items relate to the claimed harms?

Finally, there remains the significant category of Mr. Whitington's claimed protected litigation and associated costs, and the relationship of that category to the question of whether Mr. Whitington was choosing to spend his money on elective, not protected litigation, rather than hygiene. Both that litigation and the extent of the costs of that litigation are in question. For example, Mr. Whitington's description of two of his actions as proceedings in habeas corpus

"challenging his conditions of confinement," id..¶ 4, are problematic on their face.

With respect to a right of access to the courts, the Supreme Court has emphasized that such a right "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Lewis, 518 U.S. at 355. Furthermore, inmates do not have a right to file excessive motions, pleadings, exhibits or other documents simply because they either do not understand the rules or because they are inclined to keep pressing their case with afterthoughts, continuing argument, new examples or events, or the like.

In the category of deliberate indifference and qualified immunity, questions arise as to the culpable mental state of corrections personnel who are simply following regulations, who can see on the computer that Mr. Whitington received money during the month and, presumably, chose not to buy hygiene products with it. Are such personnel equipped to evaluate litigation expenses as relating or not relating to protected challenges to an inmate's sentence, or a protected conditions of confinement claim? See, id. at 361. Only a narrow class of legal actions is protected. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. at 355. Not every push, shove, annoyance or inconvenience qualifies for a conditions of confinement suit. "It is the role of courts to provide

relief to claimants . . . who have suffered, or will imminently suffer, actual harm."

Id. at 349. Costs and expenses relating to actions which are not constitutionally protected cannot be offset against amounts available for the purchase of hygiene products.

Considering the standards applicable to the grant of a preliminary injunction, and the deference we must accord a decision by the district court to deny a motion for such an injunction, together with the open questions such as the ones above, which must be resolved before any claim to relief is sufficiently clear, we have no difficulty affirming the denial of Mr. Whitington's motion for a preliminary injunction or restraining order in this case.

### C. Denial of Motion to Amend

The district court denied Mr. Whitington's motion for leave to file a second amended complaint. Mr. Whitington appeals that decision contending that the various technical reasons cited by the district court are in error and that the amendment merely supplements the first amended complaint, especially so since there were copying and page limit restrictions that hampered Mr. Whitington's filings.

"We review the denial of a motion to amend for abuse of discretion." Anderson v. Suiters, 499 F.3d. 1228, 1238 (10th Cir. 2007). Under Fed. R. Civ. P. 15(a)(2), "[r]efusing leave to amend is generally only justified upon a showing

of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of the amendment." Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993).

The district court, among other reasons, cited undue prejudice to the defendants as a ground for denying the motion to amend. That was not an abuse of discretion. Mr. Whitington's first amended complaint added several months, additional defendants, and a fourth correctional facility, Sterling, to the litany of claimed deprivations, stretching the complaint to an alleged 230 days of deprivation out of thirteen months. His proposed second amended complaint would add more time periods, more defendants, and more focus on Sterling, stretching the alleged deprivation period to be addressed by all defendants in one way or another from 230 days out of thirteen months to twenty-two months out of twenty-six months, allegedly without hygiene. Appellant's Op. Br. at 12, 15, l6, 22. Or, 384 days out of 545 days. Id. at 24.

This ambitious goal of ongoing amendments corresponding to an alleged ongoing violation has no logical ending point short of the final judgment resolving the case. And each amendment with its additional allegations and circumstances forces the defendants to reevaluate and correlate their responses and defenses. This case, with its more than 200 numbered and unnumbered paragraphs, and numerous associated documents, and additional filings with yet

more documents and allegations (the docket sheet in the district court alone runs to 134 entries, and that is only at the complaint stage), is already unwieldy. The complaint before us amply circumscribes the cause of action alleged and relief sought. As stated above, the district court did not abuse its discretion in drawing the line.

### D. Denial of Motion for Appointed Counsel

The district court denied Mr. Whitington's motion for the appointment of counsel to assist him, but did so on the ground that it was premature. We review a district court's "refusal to appoint counsel for an indigent prisoner in a civil case for abuse of discretion. The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1115 (10th Cir. 2004) (quotation and citation omitted); see Steffey v. Orman, 461 F.3d 1218, 1223-24 (10th Cir. 2006).

After the district court denied the motion for counsel as premature, Mr. Whitington did not renew his request at any later point in the proceedings. On appeal, Mr. Whitington does not reference the district court's ruling that his motion was premature. Instead, he simply argues that the district court should have appointed counsel for the reasons stated in the motion, and, because, as he now claims on appeal, he has a serious mental disability.

If for no other reason than Mr. Whitington's prolific litigation, which demonstrates a significant level of sophistication, he fails to show that the district court abused its discretion. More to the point, however, since the district court's ruling was preliminary and Mr. Whitington did not pursue the matter, the denial of the motion in question is affirmed.

### III. CONCLUSION

The district court's judgment dismissing all defendants on the ground that no Eighth Amendment claim has been stated is REVERSED. To the extent the judgment may be read as dismissing the complaint as to defendant Ortiz in his official capacity solely for injunctive purposes, it is REVERSED. The judgment dismissing the damages claims as to Director Ortiz in his personal and official capacities is AFFIRMED. The judgment dismissing the complaint as to defendant Estep is REVERSED. The judgment dismissing the complaint as to defendant Bullard is AFFIRMED. The dismissal of the action as to defendants Tornowski and Lockhart is AFFIRMED. The denial of Mr. Whitington's motion for a preliminary injunction or restraining order is AFFIRMED. The denial of Mr. Whitington's motion for leave to file a second amended complaint is AFFIRMED. The district court's denial of Mr. Whitington's motion to appoint counsel on the ground that it was premature is AFFIRMED.

We GRANT Mr. Whitington's motion for leave to proceed on appeal without prepayment of costs or fees, reminding Mr. Whitington of his continuing obligation to make such payments until the entire fee has been paid in full. We DENY Mr. Whitington's "Motion to Submit Additional Evidence To Support Appellant[']s Request For Oral Arguments Or To File Written Statements Regarding The Customs and Policies Of The CDOC Inmate Banking System."

The case is remanded for further proceedings consistent with this opinion.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge