**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 1, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHAEL WHITINGTON,

　　　　Plaintiff-Appellant,

v.

DON LAWSON; AL ESTEP; SGT.
HARDING; SGT. OLSEN; C/O
BARNS; LT. JOHN CORDOVA; LT.
ADELMAN; SGT. KAUFFMAN; LT.
LUCERO-CANNON; SGT. HUFF;
and ARISTEDES ZAVARAS,

　　　　Defendants-Appellees.

No. 10-1299
(D.C. No. 1:06-CV-00759-LTB-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

---

　　　　Michael Whitington, an inmate proceeding pro se, brought this civil-rights

action alleging that certain prison officials had violated his Eighth Amendment

---

[*]　　　　After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

rights by forcing him to choose between spending funds in his prison account either on costs incurred in accessing the courts or on hygiene items. Two previous appellate decisions refined and clarified the issues in this case. In the first we reversed the district court's dismissal for failure to exhaust administrative remedies, holding that Whitington had in fact exhausted his available remedies and that his complaint did not contain unexhausted claims. *Whitington v. Ortiz*, 472 F.3d 804, 807-09 (10th Cir. 2007). In the second we dismissed certain defendants for lack of service or lack of personal participation, reversed the district court's determination that Whitington's complaint failed to state an Eighth Amendment claim, and remanded for further proceedings against the remaining defendants. *Whitington v. Ortiz*, 307 F. App'x 179, 197 (10th Cir. 2009).

On remand Whitington filed second and third amended complaints.[1] Ultimately the district court dismissed all claims with prejudice on various grounds. On appeal Whitington challenges only the dismissals based on qualified immunity. We affirm because at the time of the challenged conduct, the law was not clearly established that the defendants' conduct violated his constitutional rights.

---

[1] The third amended complaint is incorrectly denominated "Second Amended Prisoner Complaint and Supplement." R. at 151.

## BACKGROUND

Like its predecessors, the third amended complaint (TAC) contains two purportedly separate claims that overlap so significantly as to constitute in essence a single claim. The first alleges that the defendants' "denial of hygiene items to [Whitington] was cruel and unusual punishment, violating the Eighth Amendment." R. at 156. The second urges that "the CDOC's indigent, inmate pay, inmate banking, hygiene purchasing, legal copies and postage, and medical cost policies force the plaintiff to ch[o]ose between accessing the courts, accessing medical care or rec[ei]ving ample [sic] hygiene supplies each month." *Id.* at 164 (all-caps style omitted).[2] The gravamen of both claims is that (1) Whitington was unable to pay for hygiene supplies because all his inmate pay and any funds in his prison account were levied for mandatory deductions imposed by the CDOC or spent for other constitutionally protected activities such as medical copayments and the necessary costs of protected litigation, leaving him no funds for hygiene supplies; and (2) the defendants refused to give him hygiene supplies unless he paid for them, reasoning that because he had a prison job, he was not

---

[2]     Although Whitington also mentions medical care costs in his complaint, he does not present a separate claim that he was denied medical care and does not flesh out his assertion that he was forced to choose between medical care and the payment of litigation expenses. His claim has always primarily concerned the need to choose between hygiene items and litigation expenses, and that is how we will analyze it for qualified-immunity purposes.

"indigent" and was therefore not entitled to be supplied with such supplies free of charge.[3]

The TAC details numerous occasions on which Whitington requested hygiene items from the defendants between June 2005 and April 2007 but was told he would have to pay for them because he received inmate pay and therefore did not qualify for indigent status, which would have permitted him to receive the items without paying for them. It alleges that Whitington frequently did not have sufficient remaining funds with which to purchase hygiene items, and therefore went without.[4] It further asserts that his inability to purchase hygiene items

---

[3] The TAC occasionally muddies the waters by alleging a denial of hygiene items seemingly unconnected to Whitington's dilemma of having to choose between hygiene items and litigation or medical expenses. But as we understand Whitington's claim, it rests solely on the dilemma we have identified.

[4] In his reply brief, Whitington makes assertions that seem to undermine the entire factual basis for his claim. He states:

> The Plaintiff has never requested or claimed a right to FREE hygiene items. The CDOC deducts numerous [fees] from [inmates'] accounts and/or allows them to create a negative balance for certain [fees, including] hygiene items. The CDOC allows inmates to obtain hygiene items with the use of a [miscellaneous] withdraw[al] form regardless if the inmate has any money in his inmate account. This policy allowed an inmate to creat[e] a negative balance for the purchase of hygien[e] items. This policy and practice was in place throughout the time period the Plaintiff claims in his suit. *The Plaintiff has submitted account statements from the CDOC that show deductions he has been allowed to make for hygiene items that created a negative balance.*

Reply Br. at 1 (emphasis added).

(continued...)

-4-

resulted in serious medical problems as well as his "substantial humiliation for

long periods of time." *Id.* at 166 ¶ 96.

## ANALYSIS

"This court reviews de novo a district court's grant of a motion to dismiss

based on qualified immunity." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir.),

*cert. denied*, 131 S. Ct. 7 (2010). "Well-pleaded factual allegations are taken as

true, but a court must also consider whether they plausibly give rise to an

entitlement to relief." *Id.* (internal quotation marks omitted).

"Qualified immunity protects governmental officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Id.*

---

[4](...continued)

If Whitington was permitted throughout the time period at issue to run a negative account balance to pay for hygiene items, he can hardly claim that he was denied the ability to acquire hygiene items. All he had to do was fill out a withdrawal form and request them, adding their cost to the negative balance in his prison account. The fact that such a debit would perpetuate a negative balance in his account does not in itself constitute deliberate indifference by prison officials to his need for hygiene. *See Reynolds v. Wagner*, 936 F. Supp. 1216, 1226 (E.D. Pa. 1996) (policy that required inmates without funds to pay medical copayment by accruing negative account balance that could be collected from them on discharge from incarceration did not constitute deliberate indifference to their serious medical needs) *aff'd,* 128 F.3d 166 (3d Cir. 1997). It may be that Whitington has not expressed himself clearly on this point. In any event, we need not consider it further, because the defendants are entitled to qualified immunity on this claim for the reasons we describe.

(internal quotation marks omitted). "The qualified immunity inquiry has two prongs: whether a constitutional violation occurred, and whether the violated right was 'clearly established' at the time of the violation." *Id.* at 1166-67. "[C]ourts are free to decide which prong to address first in light of the circumstances of the particular case at hand." *Id.* at 1167 (internal quotation marks omitted). Like the district court, we conclude that this case turns on whether the right asserted by Whitington was clearly established at the time the defendants allegedly violated it.

We previously defined the right Whitington asserts as "an Eighth Amendment claim for the prolonged denial of hygiene products as a result of the pursuit of constitutionally protected litigation with its associated expenses." *Whitington*, 307 F. App'x at 189. Whitington now proffers a broader right, arguing that he has shown that the defendants violated his "right to basic hygiene items." Aplt. Opening Br. at 7 (all-caps style omitted). To be sure, it is well-established in this circuit that deprivation of hygiene items for an extended period of time can implicate the Eighth Amendment. *Penrod v. Zavaras*, 94 F.3d 1399, 1405-06 (10th Cir. 1996) (per curiam). But Whitington has not alleged facts showing that the defendants denied him basic hygiene items *per se*. Rather, the TAC alleges that the defendants insisted that he use money that he needed to pay for litigation to purchase required hygiene items, forcing him to choose between two constitutionally protected activities. Thus, we conclude that our

previous description of the alleged constitutional violation, rather than the broader right now asserted by Whitington, supplies the basis for our analysis.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (internal quotation marks omitted). Although there does not need to be a "prior case[ ] with precisely the same facts," *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004), "[o]ur inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition," *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) (internal quotation marks omitted). The pertinent question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id.* (internal quotation marks omitted).

In our previous decision in this case, we observed that in dismissing Whitington's complaint for failure to state a claim, the district court had "justifiably . . . relied on decisions from our court and other courts, which were adverse to inmate plaintiffs bringing remarkably similar challenges to department of corrections regulations and practices." *Whitington*, 307 F. App'x at 188 (citing cases). It is true that we qualified this statement, noting that "[e]ach of [these] cases is distinguishable largely due to vague, inapposite or inadequate factual

-7-

allegations in the complaints." *Id.* It is also true, as Whitington points out, that the cases from this circuit that we cited were unpublished, as are most cases concerning this topic. Nevertheless, having pronounced that the district court "justifiably" concluded that Whitington's constitutional rights had not been violated, it would be ironic, at the least, to say that it should have been clear to the defendants that they were violating his rights. As the district court noted, if a court was "justified" in relying on "remarkably similar" cases to define the scope of constitutional conduct, notwithstanding the factual distinctions in those prior cases, it would be difficult to say that the defendants could not also rely on them. *See* R. at 384.

Moreover, we have uncovered no Supreme Court case directly in point. And the only published Tenth Circuit case that offers support to Whitington's position, *Penrod*, 94 F.3d 1399, falls short of clearly establishing the right that he asserts.

In *Penrod* the inmate alleged that prison officials retaliated against him in a variety of ways for exercising his First Amendment right of access to the courts, including "forc[ing] him to choose between hygiene items and pursuing grievances and legal actions." *Id.* at 1404. The inmate alleged, among other things, that a prison official "refused Plaintiff hygiene items, telling Plaintiff that if he wasn't suing police officers . . . and spending so much money on legal postage, that Plaintiff would be able to afford toothpaste and razors." *Id.* at 1405.

-8-

The official also told him that he "should not be suing people." *Id.* We reversed the district court's grant of qualified immunity on this claim, reasoning that "the jurisprudence prohibiting retaliatory acts against prisoners for reporting grievances is well-established." *Id.*

*Penrod* involved a prisoner's allegation that he was denied hygiene items by an intentional and retaliatory decision by prison officials to punish him for filing grievances and for seeking relief in court. Whitington's claim, by contrast, is not presented as a retaliation claim. *Penrod* did not establish a general rule that a prison could never, even without a retaliatory motive, apply existing policies that had the incidental effect of compelling an inmate to choose between hygiene items and payment of litigation costs. As we have now recognized, *see Whitington*, 307 F. App'x at 189, such policies may indeed violate the constitutional rights of inmates, but our case law did not clearly establish that rule during the time period relevant to Whitington's complaint.

In sum, we conclude that at the pertinent time the law was not clearly established that prison officials violated the Eighth Amendment by requiring an inmate to use funds in his prison account to purchase hygiene products, even if he did not have sufficient funds to purchase these products because of the payment of expenses for constitutionally protected litigation. Hence, the district court

properly granted qualified immunity on Whitington's claims against the defendants in their individual capacities.

The judgment of the district court is AFFIRMED.  We GRANT Whitington's application to proceed *in forma pauperis* and remind him that he is obligated to continue making partial payments until the entire appellate filing fee has been paid.

Entered for the Court


Harris L Hartz
Circuit Judge